PITTSBURGH & CONNEAUT DOCK CO. *v.* DETROIT TRANS-
PORTATION CO.

1. NEGLIGENCE—WHARVES—QUESTION FOR JURY.

In mooring defendant's steamer, the mooring line caught on and displaced a timber on plaintiff's dock, causing a hoisting machine to fall. Action was brought to recover damages for the injury done the machine. There was evidence that, when the line had been fastened to a pile on the dock, the captain of the steamer gave the signal to go ahead, after having asked a man on the dock to throw the line over the timber. The line failed to clear the timber, and the headway on the steamer caused the support to be pulled out before the line could be thrown off. *Held*, that the question of negligence on the part of the captain of the steamer was for the jury.

2. SAME—PREMISES—UNACCUSTOMED USE—CONTRIBUTORY NEGLIGENCE.

It appearing that the timber supporting the machine was sufficiently fastened for the purpose for which it was intended, plaintiff could not be charged with contributory negligence in failing to fasten it so securely that it would withstand an unusual strain, such as that to which it was subjected through defendant's negligence.

3. SAME—PRINCIPAL AND AGENT.

An accident happened from the manner in which the mooring line of defendant's steamer was handled on plaintiff's dock. The man handling the line was an employé of plaintiff, but performed the service in question at the request of the captain of defendant's steamer, such duty not being in the line of his regular employment. *Held*, that he was the agent of defendant, and his negligence must be imputed to it.

4. TRIAL—REQUESTS TO CHARGE.

    The refusal of requested instructions proper to be given is not error where they are fully covered in the general charge.

Error to Wayne; Frazer, J. Submitted November 15, 1899. Decided December 21, 1899.

Case by the Pittsburgh & Conneaut Dock Company against the Detroit Transportation Company for negligently damaging plaintiff's machinery. From a judgment for plaintiff, defendant brings error. Affirmed.

*Wells, Angell, Boynton & McMillan,* for appellant.

*Barbour & Rexford* (*Hoyt, Dustin & Kelley,* of counsel), for appellee.

LONG, J. This suit was brought to recover for damage done to the hoisting apparatus on plaintiff's dock at Conneaut, Ohio, through the alleged negligence of defendant's servants in the way in which they brought the propeller Iron Age up to the dock in order to unload thereon the steamer's cargo of iron ore. The plaintiff owns a large ore dock extending several hundred feet along the west side of the Conneaut river, near its mouth. The river runs approximately north into Lake Erie. At its mouth are piers. On the morning of July 12, 1896, the steamer Iron Age approached the harbor. A tug came out of the harbor with orders as to the place where the steamer was to discharge her cargo. The tug took the steamer's line, and the two proceeded through the piers up the river to the point where plaintiff desired the steamer to tie up. A line was passed to the dock from the steamer, and put over a mooring pile on the dock. This pile was intended to be used for this purpose. As the steamer began to move forward after the line was so placed, the line came in contact with a timber on the dock, on which rested a support to a movable apparatus used for hoisting ore from vessels and conveying it back over the dock. The pressure of the line moved the timber

outward, and the front support or leg of the hoisting apparatus was displaced, and fell partly over the front of the dock. This timber was from 10 to 16 feet long. The rail on it was much longer, and extended over the next southerly timber as well. When the northerly timber was pulled out, the next one south, to which the rail was spiked, was also drawn somewhat out of place, and the machinery fell. The declaration charges negligence, in the first count, in allowing the mooring line to drop over the end of the timber and to be drawn against it; and, in the second count, in taking so little care in the management of the steamer that its line broke the machine.

On the day of the accident, the arrangement of the hoisting machinery was as follows: There were two Brown hoists or conveyers and one or two King hoists, besides several other hoisting machines of a different type, called "whirlies." The Brown machine had in front a pair of legs shaped like a capital A, called the "A frame." These legs rested and could be moved on the rails, which were spiked to the square timbers running for a long distance near to and parallel with the face of the dock. From the top of this frame a bridge led back across the dock to two supports or towers also resting on rails. By moving these front and rear supports, the whole apparatus could be moved up and down the dock from south to north and north to south. A bucket was let down into a vessel's hold from near the top of the A frame, raised to the bridge, and carried back along it to the place where it was desired to dump the ore upon a pile or into a car. The timbers beneath the rails were about 12 inches square. The witnesses for the plaintiff testified that all these timbers, except the northernmost one, which pulled out, were drift-bolted to the timbers of the dock; that is, heavy bolts were driven down through them into heavy timbers below. The one which pulled out was not so bolted, but was toe-nailed to the planks, as there were no timbers beneath to which it could be bolted. The defendant's witnesses testify, from their examination

and measurements made just after the accident, that the easterly side of the northerly end of the timber overhung the water, and was not supported by any plank beneath it. On the other hand, one of plaintiff's witnesses testifies that the timber came only to the edge of the planking. There is likewise some dispute as to the relative position of the mooring pile or snubbing-post and this timber. All agree that the timber was between the post and the face of the dock. Gillmore and Day, plaintiff's witnesses, say the northerly end of the timber was 6 or 8 feet farther north than the post. Defendant's witnesses say that the timber ended just about opposite the post.

1. At the close of the trial, counsel for defendant asked the court to charge the jury that there was no actionable negligence shown, and that, under the undisputed evidence, plaintiff was not entitled to recover. This was refused, and we think very properly. The accident happened in daylight, and it appears that the pile to which vessels might tie was sufficient for that purpose. The timber on the dock which the rope caught and pulled out, thereby letting this machinery fall, was not intended, and not understood to be intended, to tie vessels to. It was sufficient for the purposes for which it was used, to wit, to support the machinery placed upon it. There was evidence to go to the jury upon the question whether the defendant's servants were negligent in permitting the rope to catch under the timber and thus pulling it out. The master of the boat testified:

"After I got our boat stopped, this man came out to the front of the dock, and my mate asked him to take a line, * * * so he came out to the edge of the dock. My mate hove him a line, * * * and he put it over the pile. When he got it over the pile, I asked him if he would throw it over that timber. * * * He made an effort to do so, and at that time I had signaled our engineer to go ahead. * * * This man raised the bight of the line up to throw it over the timber. He did not get it over, and just at that time the vessel was taking up the

slack of the line.    It just began to straighten it up.    I saw
it was coming against the timber, and I sang out to my
mate to throw off the line, but before he could get it off it
pulled the timber out."

It was a question for the determination of the jury,
under the circumstances here shown, whether the captain
of the vessel was negligent in giving the signal to go
ahead before seeing that the line was properly raised
above the timber.    The court submitted that question to
the jury under a very fair charge.

But it is contended by counsel for defendant that the
plaintiff invited the use of this post, and left an insecurely
fastened timber and the leg of this hoist in such position
that a line from a steamer seeking to work up to the
dock against a wind would almost certainly bear with
some force on one or the other; that under such circum-
stances the plaintiff permitted the landing place to be
unsafe, and so invited the defendant into a trap, and gave
it no warning of the situation; that this was fault con-
tributing to the injury.    But it appears that the timber
upon which the rope caught was not intended to be used
for hitching vessels, and the captain of the vessel knew
this, and apparently apprehended the danger when the
rope caught.    Defendant's servants were not invited to
use it.    It is not questioned but that the timber, whether
toe-nailed or not, was fit and sufficient for the purposes
for which it was intended, and the rule is settled that
there can be no fault in a perfectly lawful and customary
use of one's own premises.    *Alpern* v. *Churchill*, 53
Mich. 607.    The question is well illustrated in *Kinney* v.
*Onsted*, 113 Mich. 96 (38 L. R. A. 665).    It was there
held that the proprietor of a grain elevator was not liable
for injuries to a customer occasioned by the giving way of
a railing about an elevator platform, even though he had
knowledge of its defective condition, when the customer
at the time of the accident was putting the railing to a use
other than that for which it was intended   by leaning
against it for support.    It was there said.

"But, before it could become a snare or a trap, it must be assumed that its apparent good condition was an invitation to make such a use of it as the plaintiff attempted. As we have seen, its presence was not an invitation to make that use of it."

2. The court was asked by counsel for defendant to instruct the jury:

"If you find that the timber upon which the front of the hoist rested was not fastened to the dock in a reasonably safe and secure way, and that, if it had been fastened in a reasonably safe and secure way, the damage to the hoist would not have happened, then, whoever handled the line, the plaintiff cannot recover.

"If you find the damage was the result of two causes, — one negligence in handling the line or the steamer, or both, and the other an improper and unsafe mode of fastening the timber to the dock,— then, under the circumstances of this case, the plaintiff cannot recover."

These requests were refused, and the court charged the jury:

"If you shall find that a man slid down that line from the boat, and put it over the spile, and there was negligence in this act, either by the management of the boat or by the man who put it over the spile, then whatever negligence resulted was the negligence of the defendant in this suit, because nobody but the agent of the defendant had anything to do with it, if you shall believe the man slid down the line."

These requests were properly refused. As we have said, the plaintiff was not guilty of contributory negligence in leaving the timber there in that condition. Neither was the court in error in the charge above quoted. It cannot be said that the man who slid down the rope, if he did slide down it, was not the agent of the defendant.

3. It is contended that the court was also in error in refusing the following request to charge:

"The burden of proof rests upon the plaintiff to show that the damage done was due wholly to the negligence of the defendant, and that it was itself guilty of no negligence contributing to the damage. Unless the evidence

convinces you of both of these, viz., that defendant's negligence produced the damage, and that negligence on the part of the plaintiff did not contribute to that damage, the plaintiff cannot recover."

This request was a proper one, and correctly states the law, but the court refused to give the requests on either side. We think the general charge, however, fully covers this request.

4. Defendant also tendered the following request, which was refused:

"If you find that the damage to the hoist was not caused by any negligence or mismanagement of the officers or crew of the steamer, either in the running of the steamer or the handling of the line, the plaintiff cannot recover, and your verdict must be for the defendant."

This request was substantially given in the general charge.

5. Defendant also requested the court to charge:

"If you find the damage was due to the way in which the line was handled on the dock, and that the person who handled it was not one of the crew of the steamer or an employé of the defendant, the plaintiff cannot recover."

This was refused, and the court charged the jury:

"If you shall believe that this man did not slide down the line, but that the man who took the line upon the dock was the watchman of the plaintiff company, in the discharge of his duty as such watchman, and that it was part of his duty to aid these boats in the landing,— to do what he could to contribute to their landing,— in the interest of his employer, then he would be, in that act, the agent of the plaintiff, and, if he was guilty of contributory negligence in this case, then the plaintiff cannot recover. * * * It is claimed by the plaintiff in regard to this matter that that was not a part of that man's duty, that he was not employed for that purpose, and that it was no part of his business to interfere with the landing of these boats, or that, if he was asked to do it, being asked to do it made him the agent of the defendant. I charge you that such is the law; that if this was no part of his duty, and he was asked to do it by the defendant, and did it at its

request, and acting for it, in that respect he was the agent of the defendant, the boat company, and his negligence could not be determined or decided by you as contributing to the result as being the agent of the plaintiff. But, as I said to you before, if he was acting in that capacity, and he did this as a matter of duty or employment, or part of his duty or employment, on the part of the plaintiff, then a mere request to ask him to take the line would not make him the agent of the boat company, the defendant in this case."

We think there was no error in refusing the request, nor in the charge as given. It appears that none of the plaintiff's employés were on the dock at that time, except a Mr. Lindsay; and the evidence is undisputed that it was no part of the duty of Mr. Lindsay to take the line, and in fact it was shown that he was not on duty for plaintiff at that time, and was there only as a spectator. The court might well, under the undisputed evidence, have instructed the jury that the person who took the line was for that purpose the agent of the defendant. The captain testified that, when the line was thrown out, he called to this man to take it and place it over the pile.

6. We are of the opinion, also, that there was no error in the charge upon the measure of damages.

The judgment must be affirmed.

The other Justices concurred.