THOMAS v CONSUMERS POWER COMPANY
(ESTATE OF GARY M. THOMAS v THE ESTATE OF JAMES J.
THOMAS)

1. Torts—Negligence—Gross Negligence—Wilful and Wanton
   Disregard—Statutes—Common Law—Liability of Landhold-
   ers—Owners of Land—Nonpaying Persons—Liberal Con-
   struction—Easements—Owners of Easements.

   The Michigan statute regulating the liability of landholders to
   nonpaying persons on their lands for recreational purposes, and
   restricting that liability to injuries caused by the gross negli-
   gence or wilful and wanton disregard of the owner, tenant or
   lessee, is merely a codification of the common law duty of
   owners and occupiers of property to licensees and should be
   liberally construed to give the statute force and validity and
   not be given a construction which would nullify it; therefore, a
   party who holds an easement across land is an owner of a
   property interest within the meaning of the statute (MCLA
   300.201).

2. Statutes—Words and Phrases—Similar—Resemblance—Ex-
   actly Alike—Intent of Legislature—Violence to Wording.

   The word "similar" as used in a statute is generally interpreted
   to mean that one thing has a resemblance in many respects,
   nearly corresponds, is somewhat like, or has general likeness to
   some other thing; and it will not be interpreted as meaning
   exactly alike or identical where to do so would do violence to
   both the wording of the statute and the intent of the Legisla-
   ture.

3. Statutes—Liability of Landholders—Nonpaying Persons—Rec-
   reation—Wrongful Death—Case Law—Common Sense.

   Neither case law nor common sense supports an argument that

References for Points in Headnotes
[1, 3, 5, 7, 8] 62 Am Jur 2d, Premises Liability §§ 74–86.
[2] 73 Am Jur 2d, Statutes §§ 224–227.
[4] 16 Am Jur 2d, Constitutional Law §§ 495, 496, 506, 517.
[6] 62 Am Jur 2d, Premises Liability § 24.

the statute limiting liability of property owners and occupiers to nonpaying persons on their lands for recreational purposes is not applicable to actions for wrongful death (MCLA 300.201).

4. CONSTITUTIONAL LAW—LEGISLATIVE CLASSIFICATION—DUE PROCESS —EQUAL PROTECTION—REASONABLENESS—LEGITIMATE STATE INTEREST—VALIDITY.

Legislative classification is permissible so long as it is not unreasonable, arbitrary or capricious and is consistent with some legitimate state interest; and every legislative act is presumed to be constitutional and every intendment must be indulged in by the court in favor of its validity.

5. TORTS—NEGLIGENCE—DUTY OF CARE—PROPERTY OWNERS—LICENSEES—ORDINARY CARE—WILFUL OR WANTON INJURY.

The duty which owners of property owe to licensees who come upon their premises consists of the obligation to use ordinary care to avoid or prevent injury and to refrain from wilfully or wantonly injuring them.

6. NEGLIGENCE—GROSS NEGLIGENCE—ANTECEDENT NEGLIGENCE—INTERVENING NEGLIGENCE—PROXIMATE CAUSE—COMPLAINT.

The theory of gross negligence is that the antecedent negligence of plaintiff only put him in a position of danger and was therefore only the remote cause of the injury, while the subsequently intervening negligence of the defendant was the proximate cause; therefore, where no elements of prior negligence of a plaintiff or of subsequent negligence of a defendant are alleged in the complaint, there can be no recovery under a claim of gross negligence.

7. NEGLIGENCE—WILFUL OR WANTON MISCONDUCT—RECKLESS DISREGARD—DUTY—REASONABLE MAN—RISK OF HARM—ACTIVE NEGLIGENCE.

An actor is guilty of wilful and wanton misconduct where his conduct is in reckless disregard of the safety of another and he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent; but wilful and wanton misconduct does not exist where defendants were guilty of no active negligence.

8. Negligence—Owners—Licensees—Duty to Warn—Well-
   Pleaded Facts—Inadequate Lighting—Warnings to No
   Avail.

   An allegation that defendant property owners were under a duty
   to warn plaintiff licensees of a known danger is not supportable
   where, taking plaintiffs' well-pleaded facts as true, it must be
   assumed that plaintiffs drove upon defendants' property with
   inadequate or defective lighting, and warnings of the nature
   demanded by the plaintiffs would have been to no avail.

Appeal from Saginaw, Joseph R. McDonald, J.
Submitted Division 3 June 14, 1974, at Lansing.
(Docket Nos. 18925, 18926.) Decided February 11,
1975. Leave to appeal applied for.

Complaint by Aldonna F. Thomas, administra-
trix of the estate of Gary M. Thomas, and Helen
H. Thomas, administratrix of the estate of James
J. Thomas, against Consumers Power Company
and the Saginaw County Agricultural Society for
wrongful death. Judgment for defendants. Plain-
tiffs appeal. Affirmed.

*Cicinelli, Mossner, Majoros, Harrigan & Alexan-
der,* for plaintiffs.

*Smith & Brooker, P. C.* (by *Webster Cook) (W. E.
Wisner,* of counsel), for Consumers Power Com-
pany.

*Chaklos, Jungerheld, Hoffmann & O'Neil,* for
Saginaw County Agricultural Society.

Before: Quinn, P. J., and V. J. Brennan and
Carland,* JJ.

Carland, J. Actions are here brought alleging
the wrongful deaths of Gary and James J. Thomas
on January 19, 1971, arising as a result of the

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

negligence of defendants. The deaths occurred between the hours of 9 p.m. and 9:30 p.m. at a time when James J. Thomas, age 30, was operating a 1971 Ski-Doo snowmobile on property owned by the Saginaw County Agricultural Society. Gary Thomas, age 24, was a passenger on the vehicle driven by his brother.

The property, commonly referred to as the "fairgrounds", was located in the City of Saginaw and plaintiffs allege that for many years the owners had permitted snowmobiles to be operated on the premises as a recreational activity.

Certain utility poles had been located upon the property by Consumers Power Company under an easement granted to it by the feeholder. One of these poles was anchored to the ground through the use of three "guy wires". The shortest of these guy wires extended from the top of the pole to a point some 31 feet from the base of the pole. This guy wire was equipped with no shield, guard or other protective device.

It is alleged that the guy wires were not visible during the nighttime because as stated in plaintiff's complaint "they blended in with the darkness and with the surroundings and background" and were "completely camouflaged by the conditions then and there existing".

In the course of the operation of the snowmobile, it was driven between the pole and the guy wire, striking the guy wire and resulting in the death of both the driver and his passenger.

The Agricultural Society was charged with negligence in encouraging and permitting the use of its property for snowmobiling at a time when it was aware of the presence of hazardous and dangerous obstructions (poles and guy wires) upon its property and in failing to warn the public of the

existence of these hazards and in failing to properly light the premises. It was alleged that Consumers was negligent in erecting poles in places where recreational vehicles were known to travel, in failing to properly guard or shield the guy wires, in failing to mark the presence of the guy wires by the use of reflective or illuminating devices and in failing to place fences around the poles and guy wires.

By an amended complaint it is alleged that the acts and omissions of these two defendants constituted gross negligence or wilful and wanton misconduct.

After answers to the complaints were filed and before the complaints were amended, Consumers filed a motion for accelerated or summary judgment alleging that no cause of action existed in favor of the plaintiffs by virtue of the provisions of MCLA 300.201; MSA 13.1485, on the grounds that plaintiffs were upon the land of another without having paid a valuable consideration for the purpose of outdoor recreational use. The statute reads as follows:

"No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing or other similar outdoor recreational use, with or without permission, against the owner, tenant or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant or lessee."

Upon the filing of the amended complaint in each case, Consumers filed an amended motion for summary judgment incorporating by reference the allegations of the original motion and went on to

allege that plaintiffs had not stated any facts which would support a claim for gross negligence or wilful and wanton misconduct.

No formal written motion was filed by the Agricultural Society but it orally joined in Consumers' motion. After argument and the filing of briefs, the trial court entered an "order granting defendants Consumers Power Company and Saginaw County Agricultural Society's motion for summary judgment on Count I (ordinary negligence) and on Count II (gross negligence or wilful and wanton misconduct)". On November 28, 1973, the trial court issued an "amended order granting summary judgment and final judgment" as to defendants Saginaw County Agricultural Society and Consumers Power Company only. (Bombardier Ltd. had been joined as a party defendant under a products liability claim, which claim was not affected by the judgment entered.) Plaintiffs appeal as a matter of right.

It is first claimed by the plaintiffs that the trial court committed reversible error in holding that MCLA 300.201; MSA 13.485 could be invoked by defendant Consumers Power Company. This issue is wholly one of statutory interpretation, to-wit: Is it true as plaintiffs argue that the statute does not apply to an easement holder because he has no right in the property as an "owner, tenant or lessee"? Plaintiffs contend that such limitation of the force and effect of the statute is necessary because "the statute in question here, being in derogation of the common law, must be interpreted strictly and narrowly and should not be stretched beyond its plain and unambiguous meaning".

Thus the plaintiffs argue, without proving, that the statute is in derogation of the common law.

However, as the trial judge noted in his opinion, this statute does not change the common-law duty of owners and occupiers of property owed to those who come upon such property as mere licensees, as were the plaintiffs in this case. The act is merely a codification of tort principles which are universally recognized in common-law jurisdictions.

"A licensee, as distinguished from an invitee, is one who enters another's land because personal benefit will be derived by so doing; and while there his presence is merely tolerated." *Cox v Hayes,* 34 Mich App 527; 192 NW2d 68 (1971).

The act in question has the undoubted purpose of furthering recreational activities in Michigan by making certain areas available for such purposes while clearly restating the common-law liability of owners to those who come gratuitously upon their land. Under these circumstances and to carry out the undoubted intention of the legislature, it would seem the statute should be liberally construed. Courts should lean toward that construction which will give the statute force and validity, not to that construction which would nullify it. *Thomas Canning Co v Southern Pacific Co,* 219 Mich 388, 400; 189 NW 210 (1922); *Pigorsh v Fahner,* 386 Mich 508, 514; 194 NW2d 343 (1972). The statute neither restricts nor adds to the common-law rights of the plaintiffs.

It was held specifically in *Peaslee v Saginaw County Drain Commissioner,* 365 Mich 338, 344; 112 NW2d 562 (1961), that an easement is an interest in land and must be recorded with the register of deeds in the same manner as a fee simple estate if it is to give notice to future purchasers. Likewise, in *Ladd v Teichman,* 359 Mich 587, 597; 103 NW2d 338 (1960), it was determined

"an easement is a property right in real estate". Therefore, upon the acquisition of the easement here involved, Consumers became the owner of an interest in land.

Plaintiffs' contention that Consumers may not invoke the statute's protection because it could not accept the "valuable consideration" mentioned in the statute is an inference which does not follow from the premise because the invocation of the statute is not specifically based upon an ability to accept the consideration. By this argument the plaintiffs attempt to convert the consideration clause which actually establishes their own cause of action into a proviso clause against Consumers' immunity under the statute. Such a construction is completely unwarranted. *Clearwater Township v Board of Supervisors of Kalkaska County,* 187 Mich 516; 153 NW 824 (1915).

We therefore hold that as holder of an easement across the land in question Consumers Power Company was an "owner of property" within the meaning of the statute.

Plaintiffs next maintain that "snowmobiling" is not "a similar outdoor recreational use" within the meaning of the statute. Again plaintiffs urge a strict construction of the statute and would have us define the word similar as meaning "exactly alike or identical". To do so would be to do violence not only to the wording of the statute but to the intent of the Legislature. Such a definition would make the words "or other similar outdoor recreational use" absolutely meaningless. We must conclude that the Legislature intended these words to have some meaning. No other recreational activity can be exactly alike or identical to the specific activities set forth in the statute. After naming certain specific recreational activities, the

Legislature then used a broad general term in order to cover any recreational activity which might be imposed on the lands of another. We believe that "similar" is generally and most often interpreted to mean as stated in 17 ALR 92:

"The word similar is generally interpreted to mean that one thing has a resemblance in many respects, nearly corresponds, is somewhat like, or has a general likeness, to some other thing, and not to mean identical in form and substance, although in some cases 'similar' may mean 'identical' or 'exactly like'."

We therefore conclude as did the trial judge that:

"In making this finding the Court rejects plaintiff's argument that the statute does not apply to the factual situation involved in this litigation. This Court finds that the portion of the statute 'for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing or other similar outdoor recreational use' is broad enough to include the activity of plaintiff's decedent."

We conclude further that plaintiffs' argument that the statute is not applicable in actions for wrongful death is without merit and unsupported either by case law or common sense. There is, therefore, no basis for finding the trial judge to be in error as to this issue since his construction of the statute in this regard is both logically and legally correct.

The plaintiffs next contend that the statute under consideration is unconstitutional. We again point out as did the trial judge that the statute does not change the common-law duty of owners and occupiers of property; it merely restates the established common law that a person who is injured after coming upon the property of another,

with only the consent of the owner, may not bring an action against the property owner unless his injuries are the result of the gross negligence or wilful and wanton misconduct of the owner.

"Negligence implies fault; and there can be no fault in a perfectly lawful and customary use of one's own premises." *Alpern v Churchill,* 53 Mich 607, 615; 19 NW 549 (1884).

"The rule is settled that there can be no fault in a perfectly lawful and customary use of one's own premises." *Pittsburgh & Conneaut Dock Co v Detroit Transportation Co,* 122 Mich 445, 449; 81 NW 269 (1899).

We are unable to agree with plaintiffs that the statute is unconstitutional in that it discriminates in favor of owners and against licensees. Such users of another's property have always been dealt with as a distinct class with their rights distinguishable from the rights of other users. Legislative classification is permissible so long as it is not unreasonable, arbitrary or capricious and is consistent with some legitimate state interest. Reasonable classification has never been held to be in violation of either the due-process clauses of the United States and Michigan Constitutions or the equal-protection clause of the United States Constitution.

We approach the issue so raised in recognition of the principle that every legislative act is presumed to be constitutional and that every intendment must be indulged in by the courts in favor of its validity. *Hall v Calhoun County Board of Supervisors,* 373 Mich 642; 130 NW2d 414 (1964); *City of Ecorse v Peoples Community Hospital Authority,* 336 Mich 490; 58 NW2d 159 (1953).

We perceive a legitimate state objective in promoting tourism and in opening up and making

available vast areas of vacant but private lands to the use of the general public. It is difficult to see how this is to be accomplished if strict liability is to be imposed upon the owners of these lands who have gratuitously made the lands available.

In *Palmer Park Theater Company v City of Highland Park,* 362 Mich 326; 106 NW2d 845 (1961), is found the following language on page 347:

"The general rule is stated in *Mulloy v Wayne County Board of Supervisors,* 246 Mich 632, 638, [225 NW 615 (1922)], where this Court quoted with approval the following language:

" ' "The classification must be based upon substantial and real differences in the classes, which are` germane to the purpose of the law and reasonably suggest the propriety of substantially different legislation, the legislation must apply to each member of the class, and the classification must not be based on existing circumstances only, but must be so framed as to include in the class additional members as fast as they acquire the characteristics of the class." *Bingham v Board of Supervisors,* 127 Wis 344 (106 NW 1071).'

"In *Haynes v Lapeer Circuit Judge,* 201 Mich 138, 141, 142 [166 NW 938] (LRA 1918D, 233) [1918], this Court said:

" 'It is elementary that legislation which, in carrying out a public purpose for the common good, is limited by reasonable and justifiable differentiation to a distinct type or class of persons is not for that reason unconstitutional because class legislation, if germane to the object of the enactment and made uniform in its operation upon all persons of the class to which it naturally applies; but if it fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them to others of like kind, by unreasonable or arbitrary subclassification, it comes within the constitutional prohibition against class legislation.' "

We find that the statute before us is well within the guide lines set forth in the opinions of our Supreme Court and that therefore the classification here attacked is not arbitrary, unreasonable or capricious.

Since we have held Consumers Power Company as the holder of an easement to be an owner of property within the meaning of the statute, we find it unnecessary to discuss plaintiffs' claim that "the title of the act is broader than the body of the act" and therefore unconstitutional.

It is apparent that by virtue of the statute the plaintiffs, being upon defendants' property for recreational purposes and without the payment of consideration, have no cause of action against the defendants arising from ordinary negligence.

The final question to be resolved is whether the allegations of plaintiffs, when viewed in a light most favorable to them, are sufficient to raise a question of fact as to the gross negligence or wilful and wanton misconduct of the defendants. In other words, did the trial judge commit reversible error in granting summary judgment in favor of the defendants on the question of gross negligence.

Here we have premises owned and maintained by the defendants upon which are certain utility poles supported by guy wires. There is no allegation that the poles or wires were of recent installation, so we may assume that the physical condition of the premises had remained unchanged for some period of time. The poles and the wires used to sustain them were lawfully upon the premises. Their presence can in no way be separated from the valid business conducted thereon. We must accept as true the allegation of fact that the operation of snowmobiles has been permitted upon the premises without objection by the owners, also

for some period of time. Given these facts, does the admitted failure to warn licensees of the presence of these poles and wires, to place guards or fences around them or to make known their presence through the use of reflectorized material rise to the point where a question of fact is created as to the gross negligence or wanton and wilful misconduct of the defendants?

Before we can answer the question here presented, we must first delineate the duty which owners of property owe to licensees who come upon their premises, because with no duty there can be no negligence. It would seem to be well settled law in this state that such duty consists of the obligation to use ordinary care to avoid or prevent injury. It would therefore follow that where such care is exercised, no liability attaches.

"Where the negligence claimed is maintaining premises in a defective condition, the landowner owes the licensee no duty of care other than that of refraining from wilfully or wantonly injuring him." 17 Michigan Law & Practice § 37, p 429. *Alpern v Churchill* and *Pittsburgh & Conneaut Dock Co v Detroit Transportation Co, supra.*

"A person incurs no duties toward persons by not warning or driving them from his premises, and they go there, if mere volunteers, and without invitation, at their own risk." *Hargreaves v Deacon,* 25 Mich 1, 5 (1872).

"The weight of authority would appear to be that after the owner of premises is aware of the presence of a trespasser, or licensee, or if in the exercise of ordinary care he should know of their presence, he is bound to use ordinary care to prevent injury to them arising from active negligence." *Schmidt v Michigan Coal and Mining Co,* 159 Mich 308, 311, 312; 123 NW 1122 (1909). Quoted with approval in *Polston v S S Kresge Co,* 324 Mich 575, 580; 37 NW2d 638 (1949).

In *Lyshak v City of Detroit,* 351 Mich 230; 88 NW2d 596 (1958), which permitted recovery in favor of a seven year old boy, a trespasser upon a golf course, who was injured when struck by a golf ball, the Court found the defendants to have been guilty of active negligence in driving a golf ball in the direction of the boy after his presence became known to them. However, Justice Talbot Smith distinguished that case from the case at bar when he said on page 249:

"In the interests of accuracy, it should be pointed out that the case before us does not involve injury from the mere physical condition of the premises, whether natural or artificial, and hence many of the cases cited by the City against recovery (e.g. *Hargreaves v Deacon,* 25 Mich 1; *Graves v Dachille,* 328 Mich 69) are not precedent for the situation before us."

Have the plaintiffs alleged facts which in law would support a claim of gross negligence? In *La Croix v Grand Trunk Western Railway Company,* 379 Mich 417; 152 NW2d 656 (1967), it is made clear that the connotation to be given to the term "gross negligence" in cases other than guest passenger cases is the connotation set forth in *Gibbard v Cursan,* 225 Mich 311, 319; 196 NW 398 (1923).

"The theory of gross negligence is that the antecedent negligence of plaintiff only put him in a position of danger and was therefore only the remote cause of the injury, while the subsequently intervening negligence of the defendant was the proximate cause. Cooley on Torts (2d Ed), p. 674; *Labarge v Railroad Co.,* 134 Mich 139 [95 NW 1073 (1903)].

"Strictly, this is the basis of recovery in all cases of gross negligence. 20 R.C.L., p. 145. Such gross negligence is also sometimes called discovered negligence,

subsequent negligence, wanton or wilful or reckless negligence, discovered peril, last clear chance doctrine, and the humanitarian rule. Other misconduct, different in kind, is also generally and incorrectly known as gross negligence, as we shall see later."

Since no element of prior negligence by the plaintiffs or of subsequent negligence by the defendants are alleged in the complaint, there can be no basis for recovery under a claim of gross negligence.

Next we must consider whether the allegations of the complaint will support a finding of "wilful and wanton misconduct". *Gibbard, supra,* also speaks to plaintiffs' claim in this regard:

"If one wilfully injures another, or if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence. The act is characterized by wilfulness, rather than by inadvertence, it transcends negligence— is different in kind. Where recovery is sought on the theory that the injury was caused by wilful, wanton or reckless misconduct of a defendant, as distinguished from negligence, there is no more reason for permitting the defense of contributory negligence than in a case of assault and battery. True, such misconduct in this State and elsewhere usually has been called negligence, the word being qualified by such adjectives as gross, wanton, reckless or wilful, but this is incorrect and has a tendency to mislead." 225 Mich at 320–321.

Wilful and wanton is defined in 2 Restatement of Torts 2d, § 500, p 587; and by Prosser on Torts (3d Ed), § 34, p 188. Restatement of Torts 2d, § 500, defines "reckless disregard for safety" as follows:

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do,

knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

Plaintiffs rely upon the decision in *Taylor v Mathews,* 40 Mich App 74; 198 NW2d 843 (1972), wherein the Court overruled the summary judgment granted by the trial judge as to a similar claim of wilful and wanton misconduct which had been asserted by plaintiff. It would seem that *Taylor* is clearly distinguishable from the case at bar. There the defendants had permitted a diving board having nothing to do with the business of the defendant to remain in position where children might use it to dive into shallow water and be injured thereby. There certain affidavits and depositions were before the court which, when considered with the presence of the diving board, might have been evidence of active negligence on the part of the defendant. In the instant case we have only the presence of a utility pole with attendant guy wires lawfully upon the premises as an adjunct of a lawful business into which two fully grown men drove a snowmobile and were killed. Under these circumstances there would seem to be no obligation to warn as to the presence of that which the defendants had the right to construct in the operation of their business. Plaintiffs were not killed through the wilful or wanton misconduct of the defendants since the defendants were guilty of no active negligence.

Further in respect to the alleged duty of defendants to warn, it should be noted that in the present action Bombardier, Ltd., the manufacturer of the snowmobile here involved, was joined as a

party defendant under a claim of product liability. In plaintiffs' complaint it is alleged that such manufacturer was negligent in part as follows:

"In failing to design, manufacture and integrate as part of its snowmobile a front lighting system of sufficient and adequate intensity so as to reveal objects in the path of travel."

Taking all well-pleaded facts as true, it must be assumed that plaintiffs' decedent drove upon defendants' premises with inadequate or defective lights. Had the snowmobile been driven with no lights, warnings of the nature demanded by the plaintiffs would have been to no avail. Surely the defendants could not be bound to anticipate or to guard against the possibility of injury to one who entered upon their premises with insufficient lighting equipment.

We therefore hold that it is doubtful that the defendants were even guilty of ordinary negligence, and further, that under the facts alleged it could not be shown or established through proofs that defendants were guilty of gross negligence or wilful and wanton misconduct.

We affirm with costs to defendants.