David KRUSE, Plaintiff,

v.

**IRON RANGE SNOWMOBILE CLUB, Defendant.**

No. 2:93–CV–297.

United States District Court, W.D. Michigan, Southern Division.

May 26, 1995.

Vincent R. Petrucelli, Petrucelli & Petrucelli, Iron River, MI, for plaintiff.

Ronald D. Keefe, Kendricks Bordeau P.C., Marquette, MI, for defendant.

## OPINION OF THE COURT

McKEAGUE, District Judge.

This action arises out of a snowmobile accident that occurred on a snowmobile trail in Iron County, Michigan. Plaintiff David Kruse proceeds in negligence and gross negligence against defendant Iron Range Snowmobile Club ("Snowmobile Club"). The Snowmobile Club was responsible for grooming and signing the trial. This Court's jurisdiction is based solely on the parties' diversity of citizenship. 28 U.S.C. § 1332. Now before the Court is defendant's motion for summary judgment.

## I. FACTUAL BACKGROUND

On February 19, 1993, plaintiff, a Wisconsin resident, was driving a snowmobile on a state-owned "designated" snowmobile trail in Iron County in the darkness of the evening at approximately 8:00 p.m. when he struck a four-foot, unmarked, steel bridge parapet that divided two-way traffic on a railroad bridge. Plaintiff was traveling at about 30 miles per hour and did not see the bridge parapet before impact. At the time of the accident, no warning signs were posted on the bridge. Plaintiff's most serious injury is a shattered right leg that has required two knee operations, with another expected.

Defendant Snowmobile Club is said to be liable because it had contractually promised the Michigan Department of Natural Resources ("DNR") to maintain and groom some 219 miles of trails on state-owned property in Michigan's upper peninsula in exchange for reimbursement of expenses. It appears the Snowmobile Club's maintenance and grooming obligations included signing the trails. Defendant does not dispute that it had undertaken the duty to place and maintain necessary signage at the accident site.[1] Plaintiff alleges defendant breached this duty by failing to ensure that the requisite signs were in place on the night of the accident and alleges this failure constitutes negligence and gross negligence.

Defendant's motion for summary judgment is three-pronged. First, defendant contends it owed plaintiff no duty that could form the basis for plaintiff's claims. Second, defendant asserts immunity from liability for simple negligence under the Michigan Recreational Use Act, M.C.L. § 300.201(1). Third, with respect to the gross negligence claim, defendant contends plaintiff has adduced no

---

**1.** The Court observes that the documents submitted by the parties which are said to constitute the contract between the Snowmobile Club and the DNR do not expressly include a promise by the Club to sign the snowmobile trails as part of its maintenance and grooming responsibilities. The contract does include, in the application, the Club's promise to abide by the Administrative Rules for State Aid for Recreational Snowmobile Trails, said to be attached to the application. The Rules have not been provided to the Court.

The Court has reviewed the DNR Rules, found at 1979 Mich.Admin.Code, R257.1521–1533. The Rules require a "sponsor" such as the Snowmobile Club to "maintain trails." 1979 Mich.Admin.Code, R257.1529. "Maintenance" is defined in relevant part, as "grading, grooming, mowing, and brushing of trails; sign replacement and post replacement...." 1979 Mich.Admin.Code, R257.1521(j). To the extent "sign replacement" is thus made part of the contract, the scope of the Snowmobile Club's promise is not defined.

The Court also observes that the Snowmobile Club's application for trail grant, expressly incorporated into the contract, appears to be part of a larger document entitled "Recreation and Snowmobile Trail Grants Program Handbook." The Handbook includes specific signing guidelines. The Handbook is arguably part of the application, and therefore arguably part of the contract, but this fact has not been established.

Further, the uncontroverted deposition testimony of DNR Assistant Area Manager Richard Berkheiser and Club President Philip Laturi, as well as the parties' course of dealing reflect the parties' understanding that "grooming" includes signing. The parties' practical construction of their contract is entitled to great weight. *Detroit Greyhound Employees Federal Credit Union v. Aetna Life Ins. Co.*, 381 Mich. 683, 685, 167 N.W.2d 274 (1969); *Merdler v. Detroit Bd. of Educ.*, 77 Mich.App. 740, 744, 259 N.W.2d 211 (1977); *Holloway Construction Co. v. State of Michigan*, 44 Mich.App. 508, 533, 205 N.W.2d 575 (1973).

For all the foregoing reasons, the Court finds, for purposes of this motion, that the Snowmobile Club did, in fact, contractually agree to maintain, groom and sign the snowmobile trails.

evidence that could conceivably warrant a finding by a reasonable jury that its conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Fed.R.Civ.P. 56 when the record reveals no genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The question posed by defendant Snowmobile Club's motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The substantive law identifies which facts are "material." "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

## III. DUTY

Defendant Snowmobile Club questions whether its contract with the Michigan Department of Natural Resources can have given rise to a duty of ordinary care owed to a third person in plaintiff's position. It is well-settled in Michigan law that a contractual relationship between two parties may give rise to a duty owed to a third party enforceable in tort. *Stiver v. Parker,* 975 F.2d 261, 272 (6th Cir.1992); *Williams v. Polgar,* 391 Mich. 6, 18–19, 215 N.W.2d 149 (1974); *Clark v. Dalman,* 379 Mich. 251, 260–61, 150 N.W.2d 755 (1967); *Freeman–Darling, Inc. v. Andries–Storen–Reynaert Multi–Group, Inc.,* 147 Mich.App. 282, 284–85, 382 N.W.2d 769 (1985); *Talucci v. Archambault,* 20 Mich. App. 153, 160–61, 173 N.W.2d 740 (1969). Here, defendant's agreement to groom and sign the trails gave rise to a common law duty to use ordinary care in its performance so as not to endanger the person or property of members of the public reasonably expected to use the trails. *Clark, supra,* 379 Mich. at 261, 150 N.W.2d 755. Plaintiff is clearly a member of the public to whom the benefit of this duty flows. This duty forms a proper basis for plaintiff's tort claims.

## IV. RECREATIONAL USE ACT

Notwithstanding the existence of such a duty, defendant claims entitlement to the protection of the Recreational Use Act ("Act"). On the date of the accident, the Act provided in relevant part as follows:

[A] cause of action shall not arise for injuries to a person who is on the lands of another without paying to the owner, tenant or lessee of the lands a valuable consideration for the purpose of.... snowmobiling or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of the lands unless the injuries were caused by the gross negligence or willful and wanton misconduct of the owner, tenant, or lessee.

M.C.L. § 300.201(1). It is undisputed that plaintiff paid no consideration for the use of the trail. It is also undisputed that the Snowmobile Club was not, in the traditional sense of the terms, an "owner, tenant or lessee" of the subject trail. Yet, considering the liberal construction given the Act by the Michigan courts, defendant argues it is properly considered a "lessee."

In *Thomas v. Consumers Power Co.,* 58 Mich.App. 486, 491, 228 N.W.2d 786 (1975), *aff'd,* 394 Mich. 459, 460, 231 N.W.2d 653 (1975), the Michigan Court of Appeals observed that the Act should be liberally construed:

The act in question has the undoubted purpose of furthering recreational activities in Michigan by making certain areas available for such purposes while clearly

restating the common-law liability of owners to those who come gratuitously upon their land. Under these circumstances and to carry out the undoubted intention of the legislature, it would seem the statute should be liberally construed. Courts should lean toward that construction which will give the statute force and validity, not to that construction which would nullify it.

The *Thomas* court went on to hold that an easement holder was an "owner" of an interest in land or an owner of property within the meaning of the Act.

The *Thomas* reasoning was carried one step further by this Court in a recent unpublished ruling by the Honorable Robert Holmes Bell, *Bradshaw v. Tri–County of Southwestern Michigan Snowmobile Club*, W.D.Mich. No. 1:93–CV–834, Summary Judgment Opinion dated December 19, 1994. In *Bradshaw*, a snowmobile club that had been granted a permit, allowing entry onto private farmland for the purpose of making and maintaining snowmobile trails, was held to be a "lessee" under the Act. To hold otherwise, Judge Bell reasoned, would be to defeat the purpose of the Act "to further recreational activities by limiting the liability of those who make it possible." *Id.*, at p. 10.

■ The facts of the instant case are materially indistinguishable from the facts of *Bradshaw*. Granted, the Snowmobile Club was not given a "trail permit" to enter onto state-owned land, but its contract with the DNR, conferring the privilege to exercise substantial ongoing control upon the land, is the substantial equivalent of the *Bradshaw* permit. To deny the Snowmobile Club the Act's immunity simply because it does not appear to be an owner, tenant or lessee under traditional notions would be to exalt the importance of the defendant's relationship to the land in a manner disfavored by the Michigan courts. See *Wilson v. Thomas L. McNamara, Inc.*, 173 Mich.App. 372, 377, 433 N.W.2d 851 (1988), *lv. app. denied*, 437 Mich. 872 (1989) (the "owner, tenant, or lessee" language relates merely to whether a defendant is a proper defendant; the two issues central to determining the applicability of the Act's immunity are the injured person's purpose for going onto the land and the

character of the land). To hold the Snowmobile Club outside the Act's immunity would undeniably undermine the Act's purpose to promote tourism by opening up vast areas of vacant lands and making them available for use by the general public. See *Wymer v. Holmes*, 429 Mich. 66, 77–79, 412 N.W.2d 213 (1987). Where the Michigan courts have construed the Act liberally to effectuate this purpose, not nullify it, so must this Court. See *Ray Ind., Inc. v. Liberty Mutual Ins. Co.*, 974 F.2d 754, 758 (6th Cir.1992) (a federal court deciding a diversity case under state law must apply the law of the state's highest court; if the highest court has not spoken, the federal court must ascertain from all available data, including intermediate appellate court judgments, what the state law is and apply it).

Accordingly, for purposes of the immunity granted by the Recreational Use Act, the Court concludes the Snowmobile Club is a "lessee" of the trails it contractually agreed to maintain.

■ Plaintiff challenges the applicability of the Act for a second reason. The construction of the bridge is said to have altered the land from its natural state and thereby removed this portion of the snowmobile trail from the scope of the Act. Indeed, the Act was designed to apply to "large tracts of open, vacant land in a relatively natural state." *Wymer, supra*, 429 Mich. at 79, 412 N.W.2d 213. Human alterations or additions to the land may so change its character as to render the Act inapplicable. *Wilson, supra*, 173 Mich.App. at 378, 433 N.W.2d 851 (gravel pit outside scope of Act); *Cypret v. Lea*, 173 Mich.App. 222, 228–29, 433 N.W.2d 413 (1988) (gravel pit outside scope of Act); *Harris v. Vailliencourt*, 170 Mich.App. 740, 746, 428 N.W.2d 759 (1988) (recreational dock not a natural condition). "The focus is on the use of the land and whether it remains in a relatively natural state or has been developed and changed in a manner incompatible with the intention of the act." *Ellsworth v. Highland Lakes Development Assoc.*, 198 Mich. App. 55, 59, 498 N.W.2d 5 (1993), quoting *Wilson, supra*, 173 Mich.App. at 377, 433 N.W.2d 851.

The railroad bridge at issue is man-made, not a natural condition. Yet, it is part of the 219–mile network of snowmobile trails defendant had agreed to maintain. The trails, by nature, consist of countless connected parts or segments. Each part is integral to the existence of the trails and to their use. The trails enable a recreational use specifically promoted by the Act, snowmobiling, a use in which plaintiff was engaged at the time of injury. Remove the bridge and the beneficial enjoyment of the trails is materially diminished. The Court must conclude, therefore, that the railroad bridge is an artificial condition, but not one which changes the relatively natural state of the surrounding lands in a manner incompatible with the intention of the Act. Because the bridge is an integral part of snowmobile trails, whose use the Act means to promote, the fact that it is man-made does not exclude it from the scope of the Act where it was being used by plaintiff as a snowmobile trail at the time of injury.

This conclusion is consistent with the Michigan courts' inclination toward liberal construction of the Act so as to effectuate its purpose. It is also in harmony with legislative intent, as manifested by the 1993 amendment of the Act. The amendment makes clear what was formerly only implicit: that the Act's immunity extends to injuries sustained by persons while using Michigan trailways or other public trails, irrespective of the nature of the land on which the trail is situated. M.C.L. § 300.201(2).

Accordingly, the Court concludes there is no genuine issue as to any material fact concerning the applicability of the Recreational Use Act. The Act does apply and immunizes defendant Snowmobile Club from liability for simple negligence. Defendant is thus entitled to summary judgment on the claim contained in count I of the amended complaint.

## V. GROSS NEGLIGENCE

Finally, defendant contends plaintiff has failed to adduce evidence to support his gross negligence claim. The parties agree that, for purposes of plaintiff's count II claim in avoidance of immunity granted by the Recreational Use Act, gross negligence may be defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Jennings v. Southwood,* 446 Mich. 125, 136–37, 521 N.W.2d 230 (1994). Under this standard, defendant contends, no genuine issue of material fact is presented, even though plaintiff be granted the benefit of all justifiable inferences that may be drawn from the evidence.

The thrust of plaintiff's gross negligence theory is that defendant failed to ensure the bridge was properly signed as required by contract, with knowledge that the lack of signage would render the bridge hazardous to night-time snowmobile travelers. That the bridge was not properly signed on the night of the accident is a fact not disputed. James Butz, a regular user of the trail, states that he never observed warning signs on the bridge during the four years prior to the accident. Plaintiff's claim is also supported by the deposition testimony of Judson S. Matthias, Ph.D., a civil engineer with expertise in traffic engineering. In his opinion, proper maintenance and signing of the trail would have prevented the accident. Further, plaintiff contends the hazard was magnified by a change in the grooming configuration on the approach to the bridge shortly before the accident. While only one side of the bridge had customarily been groomed, on the day after the accident Mr. Butz observed that both sides of the bridge had been groomed, creating two lanes, with the middle bridge parapet left in the center of the extra-wide groomed trail (James Butz affidavit). This grooming configuration, combined with the lack of appropriate warning signs, is said to reflect reckless conduct demonstrating a substantial lack of concern for whether an injury resulted.

In opposition, the Snowmobile Club presents evidence (1) that a sign bearing the word "Bridge" was posted along the trail ahead of the bridge on the date of the accident (Ron Sherwood deposition); (2) that a monitoring DNR officer had not noticed that any signs were missing at the bridge in January 1993 (Richard Berkheiser deposition); (3) that yellow and black warning markers had been posted on the bridge para-

pet, but had been removed—probably by vandals within a week prior to the accident (Ron Sherwood deposition); and (4) that in the nine years the Club had been maintaining the trails, no accident had ever been reported at this location (Philip Laturi affidavit). Because it did not have notice that the warning signs were missing or that the bridge otherwise constituted a hazard to snowmobilers, defendant contends its alleged misfeasance cannot, as a matter of law, be deemed gross negligence.

The above evidence creates a question of fact concerning the length of time that warning signs were missing from the bridge. To determine whether this is a question of *material* fact, however, requires a closer look at the governing substantive law.

■ Under the accepted definition of gross negligence, defendant can be held liable only if plaintiff's injuries were proximately caused by its "reckless conduct." In *Jennings v. Southwood, supra,* the Michigan Supreme Court recognized that reckless conduct "transcends negligence—is different in kind." 446 Mich. at 137, 521 N.W.2d 230, quoting *Gibbard v. Cursan,* 225 Mich. 311, 320, 196 N.W. 398 (1923). Reckless conduct is not intentional or wilful, but is wanton conduct that results in "wilful injury," without intent. *Jennings,* at 140–41, 521 N.W.2d 230, quoting *Pavlov v. Community Emergency Medical Service, Inc.,* 195 Mich.App. 711, 716–17, 491 N.W.2d 874 (1992). It is conduct so reckless, demonstrating such indifference to whether harm will result, as to be the equivalent of a willingness that it does. *Id.*

> One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence. His conduct must be such as to put him in the class with the wilful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not.

*Id.,* at 141, 521 N.W.2d 230, quoting *Gibbard, supra,* at 321, 196 N.W. 398. See also *Dedes v. Asch,* 446 Mich. 99, 110–11, 521 N.W.2d 488 (1994).

■ Applying the above definitions, the Court concludes that plaintiff has failed to adduce evidence based upon which a reasonable jury could find that the Snowmobile Club acted recklessly. Absent evidence that the Snowmobile Club had actual notice that required warning signs were missing or that the bridge otherwise constituted a hazardous condition, the failure to alter the grooming or to post appropriate signs prior to plaintiff's accident, cannot be fairly characterized as recklessness or a willingness that injury occur, but only as simple negligence.

■ The outstanding question as to how long the signs were missing from the bridge is not material, because the answer would be relevant only to show constructive notice. Constructive notice of the dangerous condition would be relevant only to show negligence. Evidence of actual knowledge of the dangerous condition is essential to a finding that the Club was indifferent to the likelihood of injury. See *Jennings,* at 137, 521 N.W.2d 230. The complete failure of proof on this essential element of plaintiff's gross negligence claim necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett, supra,* 477 U.S. at 323, 106 S.Ct. at 2552.

There being no genuine issue of material fact, defendant is entitled to summary judgment on the gross negligence claim. This result is consistent with *Montgomery v. Dep't of Natural Resources,* 172 Mich.App. 718, 721–22, 432 N.W.2d 414 (1988), where the Michigan Court of Appeals affirmed the dismissal of a very similar gross negligence claim growing out of a snowmobile accident. See also *Ellsworth, supra,* 198 Mich.App. at 61–62, 498 N.W.2d 5 (observing that omissions to act seldom constitute wilful and wanton misconduct).

It is also consistent with *Thomas v. Consumers Power Co.,* 394 Mich. 459, 231 N.W.2d 653 (1975), a case cited by plaintiff. In *Thomas,* the Michigan Supreme Court reversed an award of summary judgment to the defendant on a gross negligence claim

arising from a snowmobile accident, where the plaintiff had sufficiently pleaded that the defendant knew of the dangerous condition and failed to avoid the resulting harm despite its ability to do so. Here, by contrast, plaintiff has alleged only that the defendant Snowmobile Club was in a position to know of the dangerous condition, and has failed to adduce evidence of actual knowledge. Plaintiff's evidence bespeaks negligence only, not the requisite recklessness to sustain his gross negligence claim.

## VI. CONCLUSION

In sum, the Court finds that defendant is entitled to the immunity afforded by the Recreational Use Act and that plaintiff has failed to present evidence in avoidance of the immunity. It follows that defendant is entitled to summary judgment in its favor on both of the claims contained in the first amended complaint. A judgment order consistent with this opinion shall issue forthwith.

## JUDGMENT ORDER

In accordance with the Court's written opinion of even date,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant is **AWARDED JUDGMENT** as a matter of law on both claims contained in plaintiff's first amended complaint.