JAMES v LECO CORPORATION

Docket No. 97683. Submitted January 13, 1988, at Grand Rapids. Decided July 19, 1988. Leave to appeal applied for.

Wade Coldman James and Wayne Freeman drowned when high waves swept them off a pier constructed and maintained by the United States government pursuant to an easement granted by Leco Corporation on its waterfront property bordered by Lake Michigan and the St. Joseph River and located within the limits of the City of St. Joseph. Separate actions for negligence brought by Juleen James and Joyce Freeman, the personal representatives of the decedents' estates, against Leco Corporation and the City of St. Joseph were consolidated in the Berrien Circuit Court. The city was subsequently dismissed from the action. The trial court, Casper O. Grathwohl, J., granted summary disposition in favor of defendant Leco Corporation, ruling that no genuine issues of material fact existed and defendant was entitled to judgment as a matter of law based on the recreational use statute. Plaintiffs appealed.

The Court of Appeals *held:*

1. The recreational use statute provides that a person who is on lands of another without paying to such other person a valuable consideration for any outdoor recreational use of the property may not maintain an action for his injuries against the owner, tenant or lessee of the property unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant or lessee. Here, the trial court properly ruled that the statute applied since the decedents paid no consideration for their recreational use of defendant's property, i.e., traversing defendant's entrance-approach to the pier to get to the pier, and defendant's property, despite being located within the city limits, is akin to undeveloped property suitable for outdoor recreational use and, therefore, properly subject to the recreational use statute.

2. The elements of wilful and wanton misconduct, for pur-

REFERENCES

Am Jur 2d, Premises Liability § 37.

Modern status of rules conditioning landowner's liability upon status of injured party as invitee, licensee, or trespasser. 22 ALR4th 294.

poses of the recreational use statute, consist of (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. In this case, no factual development can establish the third element with regard to defendant and its entrance-approach to the pier. Thus, the trial court did not err in granting summary disposition.

Affirmed.

1. NEGLIGENCE — RECREATIONAL USE ACT.

Owners of private land are not liable for injuries arising out of the outdoor recreational use of their land by persons who pay no valuable consideration for such use and are on the land with or without permission of the owners unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owners; in determining liability, the character of the land and the purpose of the person going on the land are central (MCL 300.201; MSA 13.1485).

2. NEGLIGENCE — RECREATIONAL USE ACT — WILFUL AND WANTON MISCONDUCT.

The elements of wilful and wanton misconduct, under the statute which limits the liability of a landowner for injuries to a person using the defendant's land for recreational purposes, are (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another (MCL 300.201; MSA 13.1485).

3. NEGLIGENCE — RECREATIONAL USE ACT — WILFUL AND WANTON MISCONDUCT.

Wilful and wanton misconduct, under the statute which limits the liability of a landowner for injuries to a person using the defendant's land for recreational purposes, is made out only if the conduct alleged shows an intent to harm or such indifference to whether harm will result as to be the equivalent of a willingness that it does (MCL 300.201; MSA 13.1485).

*Frank F. Loomis, III,* for plaintiffs.

*Smith, Haughey, Rice & Roegge* (by *Jon D. VanderPloeg*), for defendant.

Before: McDONALD, P.J., and DOCTOROFF and R. ROBINSON,* JJ.

DOCTOROFF, J. Plaintiffs appeal as of right from the trial court's order granting defendant's motion for summary disposition, MCR 2.116(C)(10). We affirm.

This case arises out of the drowning deaths of the plaintiffs' decedents, two boys ages fifteen and seventeen. On September 21, 1981, the boys entered onto defendant's beachfront property located within the city limits of St. Joseph. One side of the property bordered Lake Michigan, while another side bordered the St. Joseph River. Attached to defendant's property are two piers owned by the United States government. The piers have safety railings that lead out for a distance toward the water. For the last approximately 385 feet of each pier, however, no railings have been constructed. The United States built a sidewalk and entrance-approach to the piers in 1977.

In 1977, defendant purchased the land on which the sidewalk and entrance-approach were located. In 1978, it granted the United States an easement which permitted the continuance of the sidewalk and the entrance-approach to the pier. The government posted a warning near the piers which stated: "Keep off during storms or high seas."

On the afternoon of September 27, 1981, plaintiffs' decedents played a game on the south pier which was awash with high waves. The waves swept them off the pier to their deaths.

Plaintiffs initially filed individual suits, naming

* Former circuit judge, sitting on the Court of Appeals by assignment.

the City of St. Joseph as an additional defendant. The city was ultimately dismissed from each action. The cases were subsequently consolidated.

Defendant then moved for summary disposition. The trial court ruled that the recreational use statute applied to these cases and granted defendant's motion for summary disposition as to plaintiffs' claim of wilful and wanton misconduct.

I

Plaintiffs now claim that the trial court erred by finding that the Michigan recreational use statute applied to this case. In support of this contention, plaintiffs advance several arguments. They first claim that their decedents' status at the time of their deaths was that of public or business invitees.

At the time of decedents' deaths, the Michigan recreational use statute, MCL 300.201; MSA 13.1485, provided:

No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee.

Plaintiffs' argument that one's status as a public invitee precludes application of the statute has been previously decided adversely to them in *Matthews v Detroit,* 141 Mich App 712, 717; 367 NW2d 440 (1985), lv den 422 Mich 978 (1985).

Turning to plaintiffs' claim that their decedents were business invitees, they allege that their decedents' visit to defendant's property conferred an anticipated monetary benefit on defendant. They assert that the attraction of the entrance-approach to the pier as well as the pier draw the public by the thousands and enhance the value of defendant's recreational beachfront property. Plaintiffs' argument implies that the decedents' use of the property was not gratuitous.

Notwithstanding any anticipated monetary benefit that defendant may or may not have realized, no valuable consideration was actually paid to defendant by the decedents for use of the property. Therefore, this case does not fall outside of the reach of the statute.

Further, the focus of the statute is not the status of the user. As stated in *Wymer v Holmes,* 429 Mich 66, 79-80; 412 NW2d 213 (1987):

> Michigan's recreational use statute redirected the focus of landowner liability from the status of the user of the property, making the purpose of going on the land and the character of land central to the determination of the owner's liability. Accordingly, we have determined the applicability of the statute in these cases with that same focus in mind, as opposed to the status-of-the-user focus applied by the lower courts when emphasizing the status of the plaintiffs as social guests.

Plaintiffs also claim that the recreational use statute does not apply because their decedents had a right to use defendant's property as a matter of public right. They argue that the use of the property cannot then be gratuitous because defendant could not have charged a fee for its use in any event.

In *Thomas v Consumers Power Co,* 58 Mich App

486; 228 NW2d 786 (1975), modified 394 Mich 459; 231 NW2d 653 (1975), the plaintiffs claimed that Consumers Power Company could not invoke the protection of the recreational use statute because it could not accept consideration for use of its easement. In rejecting the plaintiffs' argument, this Court held, p 493:

> Plaintiffs' contention that Consumers may not invoke the statute's protection because it could not accept the "valuable consideration" mentioned in the statute is an inference which does not follow from the premise because the invocation of the statute is not specifically based upon an ability to accept the consideration. By this argument the plaintiffs attempt to convert the consideration clause which actually establishes their own cause of action into a proviso clause against Consumers' immunity under the statute. Such a construction is completely unwarranted. *Clearwater Township v Board of Supervisors of Kalkaska County,* 187 Mich 516; 153 NW 824 (1915).

Similarly, plaintiffs' argument that defendant could not charge a fee for use of its land because their decedents had a right to be on it and that such bars application of the recreational use statute is without merit.

Plaintiffs next assert that the recreational use statute does not apply to this case because their decedents were not injured on defendant's land, but rather were injured while on the end of the government's pier attached to, but away from, defendant's land. They posit that the language of the statute stating that "no cause of action shall arise for injuries to any person *who is on the lands of another"* clearly means that the person must be injured *while* physically on that land before the recreational use statute applies.

In *Wymer, supra,* pp 76-77, the Supreme Court construed the recreational use statute in light of the general purpose to be accomplished:

> The act, as amended by 1964 PA 199, § 1 and 1974 PA 177, states the purpose as:
> "An act restricting suits by persons coming upon the property of another for certain purposes; and to declare the limited liability of owners of property within this state."

The *Wymer* Court further stated:

> It is reasonable to assume that the Michigan statute has the similar general purpose of similar acts in other jurisdictions: to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

Clearly, plaintiffs' decedents used defendant's property for recreational purposes, traversing it in order to walk on the pier. Plaintiffs have alleged that it was this use of "the lands of another," in this case defendant's property, that was in fact the proximate cause of their decedents' deaths.

We decline to read the recreational use statute as narrowly as plaintiffs urge this Court to do. The statute's stated purpose would not be furthered were we to distinguish cases in which the plaintiff incurred injuries while physically located on the property which he was gratuitously using for recreational purposes from cases in which the plaintiff incurred injuries proximately caused by property which he was gratuitously using for recreational purposes. We are convinced that the purpose of the statute would be furthered by giving it a somewhat more liberal construction, *Thomas,*

*supra.* Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, a construction may be put upon it which modifies the meaning of the words. See *Williams v Secretary of State,* 338 Mich 202, 208; 60 NW2d 910 (1953). We hold that the recreational use statute applies to plaintiffs' cause of action for injuries alleged to be proximately caused by use of defendant's land.

Plaintiffs additionally assert that the Supreme Court's interpretation of the recreational use statute as detailed in *Wymer, supra,* makes it abundantly clear that the recreational use statute is not applicable to this case. They contend that the land was "urban" because it is located within the city limits of St. Joseph, and that it is "developed" because the government built a concrete entrance-approach to its pier on defendant's land.

In *Wymer, supra,* the Supreme Court considered the applicability of the recreational use statute to two cases before it. In the first case, the plaintiff's decedent drowned in the pond that the defendants had constructed in their own backyard. In the second case, the plaintiff sustained injuries in a subdivision's man-made lake that was owned by subdivision homeowners. The Court found that the recreational use statute was not applicable to these cases:

> [T]he statute was intended to apply to large tracts of undeveloped land suitable for outdoor recreational uses. Urban, suburban, and subdivided lands were not intended to be covered by the RUA. The intention of the Legislature to limit owner liability derives from the impracticability of keeping certain tracts of lands safe for public use. The same need to limit owner liability does not rise in the case of recreational facilities which, in

contrast, are relatively easy to supervise and monitor for safety hazards. [*Id.,* p 79.]

Through use of the commonly understood meanings of the terms used by the Supreme Court in *Wymer,* we are totally unconvinced that defendant's land is excluded from application of the recreational use statute because it is "urban, developed" land. Rather, the beachfront property falls in the category of a large tract of undeveloped property suitable for outdoor recreational use, *Wymer, supra.* Accordingly, the trial court did not err by applying the recreational use statute to the present case.

II

Plaintiffs claim that the trial court erred by granting defendant's motion for summary disposition on the claim of wilful and wanton misconduct.

Summary disposition pursuant to MCR 2.116(C)(10) tests the factual support for a claim. *Maccabees Mutual Life Ins Co v Dep't of Treasury,* 122 Mich App 660, 663; 332 NW2d 561 (1983), lv den 417 Mich 1100.15 (1983). The opposing party has the obligation to make a showing that a material issue of fact exists. *Fillare v Union Oil Co of California,* 143 Mich App 520, 525; 372 NW2d 606 (1985). It must be determined whether the record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ. *Rizzo v Kretschmer,* 389 Mich 363, 371-373; 207 NW2d 316 (1973). The reviewing court will affirm if plaintiff's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right of recovery. *Burnett v City of Adrian,* 414 Mich 448, 457-458; 326 NW2d 810 (1982).

In *Burnett, supra,* p 455, the Supreme Court, while expressing some dissatisfaction with the three-element formula for use in determining wilful and wanton misconduct as contained in *Gibbard v Cursan,* 225 Mich 311; 196 NW 398 (1923), nonetheless did not overrule that decision. The test for wilful and wanton misconduct as articulated in *Gibbard* provides that a plaintiff must show the following:

> "(1) Knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another; (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." [*Id.,* p 322, quoting 69 LRA 516 and 20 RCL 145.]

The *Burnett* Court clarified the *Gibbard* test, stating that wilful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or such indifference to whether harm will result as to be the equivalent of a willingness that it does occur. *Burnett, supra,* p 456. Our review of the record in this matter indicates that plaintiffs have failed to raise a genuine issue of material fact regarding the third requirement of the *Gibbard* test.

In *Matthews, supra,* the plaintiff's six-year-old decedent drowned in a lagoon surrounding the fountain on Belle Isle. In denying defendant's motion for summary disposition, the Court compared the case before it to the case of *Burnett, supra:*

> The *Burnett* Court found allegations barely suffi-

cient to comprise wilful and wanton misconduct where the plaintiff alleged that the defendant knew that the submerged structure in the lake was creating an unnatural undertow dangerous to swimmers but did nothing to remove it. A structure creating an undertow, like exposed guy wires (*Thomas v Consumers Power Co,* 394 Mich 459; 231 NW2d 653 [1975]) or a precipitous escarpment created by defendant (*Lucchesi v Kent County Road Comm* [109 Mich App 254; 312 NW2d 86 (1981)]), is inherently dangerous to anyone coming into contact with it, making the defendant's refusal to correct the situation akin to an intent to harm. In contrast, a slippery fountain pool, like sand dunes used for ORV vehicles (*McNeal v DNR,* [140 Mich App 625; 364 NW2d 768 (1985)]) presents no threat to most people who come into contact with it, so that even if the defendant knows accidents have occurred in the past, the defendant's failure to correct the situation does not amount to wilful and wanton misconduct without more facts. As noted by the late Justice Moody, wilful and wanton misconduct is qualitatively different from and more blameworthy than ordinary, or even gross, negligence. *Burnett, supra,* p 462. [*Matthews, supra,* p 719.]

In the present case, defendant's entrance-approach to the government's pier near which a warning sign is located is not inherently dangerous and presents no threat to most people who come into contact with it for use to lead to the pier.

It would not be apparent to the ordinary mind that the result of failing to take certain measures which plaintiffs allege should have been taken would likely prove disastrous to another, *Gibbard, supra.* Accordingly, the trial court did not err by granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10).

Our disposition of this matter renders it unnec-

essary to address the remaining issues. See *Parsonson v Construction Equipment Co,* 18 Mich App 87, 90; 170 NW2d 479 (1969), aff'd 386 Mich 61; 191 NW2d 465 (1971).

Affirmed.