## CYPRET v LEA

Docket No. 101560, 101561. Submitted July 7, 1988, at Lansing. Decided November 22, 1988. Leave to appeal applied for.

Sherry Marie Jacoby and Denise Marie Olmstead drowned in a water-filled gravel pit when the four-wheel-drive vehicle they were riding near the edge of the pit rolled on its side and slid to the bottom of the pit. The vehicle's driver was Kelly S. Lea, the gravel pit was located on adjoining properties owned by Vira L. Pierce and LaVerne and Bertha Burley, and mining operations had been conducted in the pit by Ron Weaver Gravel Company and Spartan Aggregates, Inc. Linda Cypret, the personal representative of the estate of Sherry Marie Jacoby, and Kenneth H. Olmstead, the personal representative of the estate of Denise Marie Olmstead, each brought a negligence action in the Eaton Circuit Court against the individuals and entities named above and certain others. The actions were consolidated and the trial court, Hudson E. Deming, J., granted summary disposition in favor of defendants Pierce, Burley, Ron Weaver Gravel Company and Spartan Aggregates, Inc., ruling that the action with respect to these defendants was barred by the recreational land use act. Plaintiffs appealed.

The Court of Appeals *held:*

The recreational land use act, which provides that owners of land and their tenants or lessees are not liable for injuries arising out of the outdoor recreational use of their land by persons who pay no valuable consideration for such use and are on the land with or without the permission of the owners or their tenants or lessees unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owners or their tenants or lessees, applies to large tracts of undeveloped land which are in their relatively natural state and suitable for outdoor recreational uses. The act does not apply where the land in question, as in this case, has a significant

REFERENCES

Am Jur 2d, Premises Liability §§ 37, 75, 269

Effect of statute limiting landowner's liability for personal injury to recreational user. 47 ALR4th 262.

artificial condition created by the intervention of human action on the landscape.

Reversed.

Negligence — Recreational Land Use Act.

The recreational land use act, which provides that owners of land and their tenants or lessees are not liable for injuries arising out of the outdoor recreational use of their land by persons who pay no valuable consideration for such use and are on the land with or without the permission of the owners or their tenants or lessees unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owners or their tenants or lessees, applies to large tracts of undeveloped land which are in their relatively natural state and suitable for outdoor recreational uses; the act does not apply where the land in question has a significant artificial condition such as a gravel pit.

*McGinty, Brown, Jakubiak, Frankland & Hitch, P.C.* (by *Charles E. Henderson*), for plaintiffs.

*Cholette, Perkins & Buchanan* (by *Robert E. Attmore*), for LaVerne Burley and Bertha Burley.

*Foster, Swift, Collins & Coey, P.C.* (by *Scott L. Mandel*), for Spartan Aggregates, Inc.

*Denfield, Timmer & Taylor* (by *George H. Denfield* and *James S. Jamo*), for Vira L. Pierce.

*Willingham & Coté, P.C.* (by *Ray Foresman* and *Curtis R. Hadley*), for Ron Weaver Gravel Company.

Before: Beasley, P.J., and Sawyer and T. J. Foley,* JJ.

Per Curiam. Plaintiffs appeal following the entry of orders of summary disposition in favor of defendants on plaintiffs' wrongful death claims. The orders of summary disposition were certified

---

* Circuit judge, sitting on the Court of Appeals by assignment.

as final judgments pursuant to MCR 2.604(A). We reverse.

On July 24, 1983, a group of young people, including plaintiffs' decedents, had gathered at a gravel pit known as the Barnes Road Gravel Pit, located in an area bordered by Barnes, Toles, Arch, and Waverly Roads in Eaton County. The pit was relatively isolated in that it was one-third to one-half miles from the roads, but three unimproved, unnamed roads led from the surrounding roads to the pit. Apparently, young people frequently used the pit as a place to congregate, swim, and drive off-road vehicles. Defendant Kelly Lea, who had taken his four-wheel-drive vehicle to the pit, agreed to take plaintiffs' decedents for a ride around the pit. Lea had driven around the pit once earlier in the evening. Lea started around the pit, driving in the direction opposite that which he had driven earlier. At some point, the vehicle started to roll over onto the driver's side. The vehicle slid on its side down a bank and hit the water, slid down the underwater bank to the bottom of the pit, and came to rest on its roof. Lea was able to escape, and although several persons jumped into the water to help, plaintiffs' decedents were not able to escape and drowned.

At the time of the accident, the gravel pit was located on adjoining properties owned by defendant Pierce and by defendants LaVerne and Bertha Burley. The property line ran through the pit. The pit was created by separate operations by Ron Weaver Gravel Company and Spartan Aggregates, Inc. In 1976, Weaver Gravel and the Burleys orally agreed that Weaver Gravel would extract gravel from the vein on the Burleys' property, paying the Burleys twenty-five cents per cubic yard for the gravel. Weaver Gravel ceased work on the property in May, 1979. In June, 1978, Spartan

Aggregates and Pierce signed an agreement allowing Spartan Aggregates to remove gravel from a section of Pierce's property in return for the payment of twenty-five cents per cubic yard. Although there is some confusion about the dates of Spartan Aggregate's work on the Pierce property, Spartan Aggregates did no work on the property after April, 1982. At some point, the separate pits created by Weaver Gravel and Spartan Aggregates were merged near the Burley/Pierce property line.

Weaver Gravel and Spartan Aggregates performed reclamation work on their respective areas. According to Spartan Aggregates, Pierce planned to use the pit as a receptacle for debris, and thus did not want it to be filled. Even after the reclamation work was finished, the pit walls were still quite steep. The pit's structure does not appear to have changed significantly between the time Spartan Aggregates finished its work and the time the accident occurred.

Plaintiffs filed suit alleging negligence, gross negligence, and wilful and wanton misconduct on the part of defendants in that they failed to maintain the property in a safe condition, failed to post signs restricting access to the property and thus acquiesced in the use of the property by others, failed to post signs warning of the dangerous condition of the pit, failed to place a barricade or a sign in front of the precipice over which Lea's vehicle slid, and failed to bulldoze the banks of the pit to make them less steep. The trial court granted summary disposition on the basis that the recreational land use act (RUA), MCL 300.201; MSA 13.1485, barred recovery by plaintiffs.

At the time of the accident which gave rise to the instant litigation, MCL 300.201; MSA 13.1485 provided as follows:

No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use, with or without permission, against the owner, tenant, or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee.

The Supreme Court had the opportunity to interpret this statute in *Wymer v Holmes,* 429 Mich 66; 412 NW2d 213 (1987). In doing so, the Court in *Wymer, supra* at 79-80, concluded that the statute is applicable only to large tracts of undeveloped lands in a relatively natural state which are suitable for outdoor recreational uses:

The legislative history of the recreational land use statute and its two predecessor statutes, as well as other interpretative aids, also indicate that the Legislature intended the act to apply specifically to certain enumerated outdoor activities (fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling) which, ordinarily, can be accommodated only on tracts of land which are difficult to defend from trespassers and to make safe for invited persons engaged in recreational activities. The commonality among all these enumerated uses is that they generally require large tracts of open, vacant land in a relatively natural state. This fact and the legislative history of the RUA make clear to us that the statute was intended to apply to large tracts of undeveloped land suitable for outdoor recreational uses. Urban, suburban, and subdivided lands were not intended to be covered by the RUA. The intention of the Legislature to limit owner liability derives from the impracticability of keeping certain tracts of lands safe for public use. The same

need to limit owner liability does not arise in the case of recreational facilities which, in contrast, are relatively easy to supervise and monitor for safety hazards.

As our analysis reveals, Michigan's recreational use statute redirected the focus of landowner liability from the status of the user of the property, making the purpose of going on the land and the character of land central to the determination of the owner's liability.

The Court concluded that in the two cases before it the RUA did not apply because the land involved was urban, suburban or subdivided as opposed to a large tract of undeveloped land. Specifically, in one case, a young girl drowned in a man-made pond in the defendant's back yard and, in the companion case, a plaintiff broke his neck when falling head first in a man-made lake which was part of a private park maintained by a homeowner's association comprised of the homeowners of a subdivision.

The cases decided by this Court since *Wymer* have, like *Wymer,* focused on whether the property involved was a large tract of undeveloped land as opposed to whether the land was in a relatively natural condition. See *Harris v Vailliencourt,* 170 Mich App 740; 428 NW2d 759 (1988); *James v Leco Corp,* 170 Mich App 184; 427 NW2d 920 (1988); *Murday v Bales Trucking, Inc,* 165 Mich App 747; 419 NW2d 451 (1988). The *Harris* Court did note that the accident involved a structure, specifically a dock, which was not a natural condition but a recreational facility developed by the homeowner's association which was relatively easy to supervise and monitor for safety hazards.

Plaintiffs argue on appeal, inter alia, that the land involved does not come within the provisions of the RUA because it is not a large tract of

undeveloped land. We decline to address this issue, however, because, as pointed out by defendant Spartan Aggregates, it does not appear that plaintiffs raised this issue in the trial court, thus precluding appellate review. *Michigan Mutual Ins Co v American Community Mutual Ins Co,* 165 Mich App 269; 418 NW2d 455 (1987).[1] Instead, we focus our attention on an issue which was raised in the trial court, namely whether the RUA protects property owners if an injury arises out of an artificial condition on the land or by a condition created by a commercial enterprise. As indicated above, the *Harris* Court did list as one factor in its conclusion that the dock was not a natural condition. *Harris, supra* at 746. We conclude that the gravel pit does not come within the provisions of the RUA because it is not "in a relatively natural state." *Wymer, supra* at 79.

The gravel pit was an artificial condition manufactured by the intervention of human action on the landscape. The pit and the surrounding area was not formed by the forces of Mother Nature, but by the forces of equipment employed by defendant gravel companies under license from the property owners. Certainly the RUA has not been rendered inapplicable solely because there has

---

[1] We do note, however, that were we to address the question whether the property involved constitutes a large tract of undeveloped land suitable for outdoor recreation as opposed to an urban, suburban, or subdivided land as discussed in *Wymer, supra,* an interesting issue would present itself. Specifically, accepting without deciding that the property at issue is a large tract of undeveloped land, thus generally coming within the provisions of the RUA, the gravel pit itself is not large and it is not necessarily impracticable to keep that portion of the tract of land safe for public use. As the Court noted in *Wymer, supra* at 79, the legislative intent behind the RUA was to limit owner liability based upon the impracticability of keeping certain tracts of lands safe for public use. Thus the question arises whether a small portion of a large tract of land might nevertheless be excluded under the RUA because it would be practicable to render that unsafe portion safe. However, we leave it for another case to resolve that question.

been some human action on the land, as such a conclusion would ignore the Supreme Court's use of the modifier "relatively" in stating that the land must be in a natural state. On the other hand, there also comes a point where the human intervention on the land has deprived the land of its relatively natural state, thus removing the land from the provisions of the RUA. We believe this to be the situation in the case at bar. The gravel pit was the result of excavations by two separate companies over the course of time which dramatically changed the features of the land involved, giving rise to the steep bank which allegedly caused the accident in the case at bar.

For the above reasons, we conclude that, because of a significant artificial condition, i.e., the gravel pit, the land involved was not in a relatively natural state and, therefore, the RUA is inapplicable to the case at bar. While the liability of the defendant property owners and gravel companies appears questionable for other reasons, particularly given the status of plaintiffs' decedents as trespassers, the RUA does not relieve defendants of liability.

Reversed. Plaintiffs may tax costs.