ELLSWORTH v HIGHLAND LAKES DEVELOPMENT
ASSOCIATES

Docket No. 128676. Submitted December 2, 1992, at Detroit. Decided
January 20, 1993, at 9:00 A.M. Leave to appeal sought.

Thomas Ellsworth, as personal representative of the estate of
Nathaniel Ellsworth, who died at age five, brought an action in
the Oakland Circuit Court against Highland Lakes Develop-
ment Associates and Michael Combs, alleging negligence and
attractive nuisance against Highland Lakes with respect to a
ninety-seven-acre tract of land owned by Highland Lakes on
which the decedent, while playing, sustained fatal injuries
when struck by a motorcycle ridden by Combs. Combs thereaf-
ter was convicted of negligent homicide. The court, Robert L.
Templin, J., granted summary disposition for Highland Lakes,
ruling that the claims against it were barred by the recre-
ational land use act, MCL 300.201; MSA 13.1485. The plaintiff
appealed.

The Court of Appeals *held:*

Pursuant to the recreational land use act, owners of private
land are not liable for injuries arising out of the outdoor
recreational use of their land by persons who are on the land
with or without permission of the owners, unless the injuries
were caused by the gross negligence or wilful and wanton
misconduct of the owners. The act applies to large tracts of
undeveloped land that have recreational value, but not to
urban, suburban, and subdivided lands.

In this case, the trial court did not err in ruling that the act
applied to the plaintiff's claims. The land in question was used
for various recreational activities and was undeveloped, and the
plaintiff failed to establish gross negligence or wilful and wan-
ton misconduct with respect to the alleged failure by Highland
Lakes to prevent motorcyclists from using the land. Addition-
ally, the attractive nuisance claim merely duplicated the negli-

REFERENCES

Am Jur 2d, Premises Liability § 118 *et seq.,* 259.

Modern status of rules conditioning landowner's liability upon
status of injured party as invitee, licensee, or trespasser. 22
ALR4th 294.

gence claim, and Highland Lakes cannot be held responsible for the protection of the decedent from Combs' criminal act.
Affirmed.

1. NEGLIGENCE — RECREATIONAL LAND USE ACT — LIABILITY OF OWNERS.

Owners of private land are not liable for injuries arising out of the outdoor recreational use of their land by persons who are on the land with or without their permission, unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owners (MCL 300.201; MSA 13.1485).

2. NEGLIGENCE — RECREATIONAL LAND USE ACT — APPLICATION OF ACT.

The recreational land use act applies to large tracts of undeveloped land that have recreational value, but not to urban, suburban, and subdivided lands (MCL 300.201; MSA 13.1485).

3. NEGLIGENCE — TRESPASSERS — CRIMINAL ACTS OF THIRD PARTIES.

Landowners have no duty to protect trespassers from the criminal acts of third parties.

*Still, Nemier, Tolari & Landry, P.C.* (by *David B. Landry*), and (*Bendure & Thomas* by *Mark R. Bendure* and *Victor S. Valenti,* of Counsel), for the plaintiff.

*Victor L. Graf, Jr.,* for the defendants.

Before: CORRIGAN, P.J., and WEAVER and CONNOR, JJ.

PER CURIAM. In this landowner's liability action, plaintiff Thomas Ellsworth, as personal representative of the estate of Nathaniel Ellsworth, deceased, appeals the grant of summary disposition to defendant Highland Lakes Development Associates pursuant to MCR 2.116(C)(8). We affirm.

On May 2, 1986, Nathaniel, then five years old, was on his way to catch frogs on defendant's land when he was struck by defendant Michael Combs' motorcycle. Nathaniel died from his injuries. Defendant Combs later pleaded guilty to negligent

homicide. The accident occurred on what was orig-
inally a tract of farmland acquired by defendant in
the mid-1960s. After a brief attempt to farm the
property, the Highland Lakes partners sold the
entire 107-acre parcel on land contract. The
vendee sold four small parcels and then defaulted
on the contract. The remaining ninety-seven-acre
tract was returned to Highland Lakes. The part-
ners were attempting to sell the still untouched
property at the time of the accident.

Plaintiff's complaint alleged that Highland
Lakes was liable under theories of negligence and
attractive nuisance. Highland Lakes sought sum-
mary disposition pursuant to MCR 2.116(C)(8) and
(C)(10). The trial court granted the motion, relying
on MCL 300.201; MSA 13.1485, the recreational
land use act (RUA).

Plaintiff asserts that the RUA is inapplicable. We
disagree. The circuit court properly granted immu-
nity to defendants in this case. The act clearly
applies to large tracts of undeveloped land, such as
this parcel. The act mandates dismissal of ordi-
nary negligence and attractive nuisance claims,
and plaintiff cannot prove gross negligence or
wilful and wanton misconduct. Finally, landown-
ers are not responsible to protect trespassers from
the criminal acts of third parties.

Plaintiff initially argues that the proper author-
ity for summary disposition for immunity granted
by law is MCR 2.117(C)(7), and not (C)(8). Alterna-
tively, plaintiff says that the trial court considered
evidence beyond the pleadings. Because summary
disposition was appropriate under either subrule
C(7) or C(10), we will not disturb the result below.
If summary disposition is granted under one sub-
part of the court rule when judgment is appropri-
ate under another subpart, the defect is not fatal.
The mislabeling of a motion does not preclude

review where the lower court record otherwise permits it. *Wilson v Thomas L McNamara, Inc,* 173 Mich App 372, 376; 433 NW2d 851 (1988).

At the time of the decedent's injury, the RUA provided:

> No cause of action shall arise for injuries to any person who is on the lands of another without paying to such other person a valuable consideration for the purpose of fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snow-mobiling, or *any other outdoor recreational use,* with or without permission, against the owner, tenant, or lessee of such premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant, or lessee. [MCL 300.201; MSA 13.1485.]

The Supreme Court examined the RUA most recently in *Wymer v Holmes,* 429 Mich 66; 412 NW2d 213 (1987). Both *Wymer* plaintiffs were social guests injured at defendants' residences. One plaintiff drowned in a backyard pond and the other was injured after diving into a man-made lake. The Court ultimately determined that neither defendant was immune under the RUA:

> [T]he Legislature intended the act to apply to . . . outdoor activities . . . which, ordinarily, can be accommodated only on tracts of land which are difficult to defend from trespassers and to make safe for invited persons engaged in recreational activities. The commonality among all these enumerated uses is that they generally require *large tracts of open, vacant land in a relatively natural state.* This fact and the legislative history of the RUA make clear to us that the statute was intended to apply to large tracts of undeveloped land suitable for outdoor recreational uses. Urban, suburban, and subdivided lands were not intended to be covered by the RUA. The intention of the Legis-

lature to limit owner liability derives from the impracticability of keeping certain tracts of lands safe for public use. [*Id.* at 79; emphasis supplied.]

Human intervention will most often defeat the protection of the RUA. *Cypret v Lea,* 173 Mich App 222; 433 NW2d 413 (1988). When the land is still in a "relatively natural state," the RUA will bar a cause of action. See *James v Leco Corp,* 170 Mich App 184, 192; 427 NW2d 920 (1988) (undeveloped beachfront property); *Randall v Harrold,* 121 Mich App 212; 328 NW2d 622 (1982) (lagoon); *Thomas v Consumers Power Co,* 58 Mich App 486; 228 NW2d 786 (1975), aff'd 394 Mich 459; 231 NW2d 653 (1975) (utility company easement).

In contrast, *Wilson, supra,* held that the RUA did not apply to a man-made pond on a large undeveloped tract of land. "The focus is on the use of the land and *whether it remains in a relatively natural state* or has been developed and changed in a manner incompatible with the intention of the act." *Id.* at 377 (emphasis supplied). See also *Cypret, supra,* where the plaintiff drowned in a gravel pit created by "excavations . . . which dramatically changed the features of the land involved." *Id.* at 229. In *Harris v Vailliencourt,* 170 Mich App 740; 428 NW2d 759 (1988), the RUA was held not to apply to a dock that was "not a natural condition but is a recreational facility, developed by the homeowners association." *Id.* at 746.

The circuit court did not err in dismissing plaintiff's claim. Defendant's land is a large undeveloped tract. The area was known locally as "Johnson's Field," another indicator of its unspoiled natural state. A sheriff's investigator testified on deposition that the land was being used for other recreational activities (kite flying, bike riding, ball

playing, walking, and off-road-vehicle riding) in addition to motorcycle riding. Indeed, it is undisputed that the decedent and defendant Combs both were engaged in activities contemplated by the act.

Plaintiff, relying on *Wymer*'s exclusion for "urban, suburban, and subdivided lands," 429 Mich 79, asserts that whether defendant's land was suburban is a question of fact. We disagree. Plaintiff's evidence on this issue consists of some census figures, a map, and a property survey.[1] The mere presence of homes near a large, undeveloped tract of land does not make the land "suburban." A suburb is "an outlying part of a city or town; a smaller place adjacent to or sometimes within commuting distance of a city; the residential area on the outskirts of any city or large town." *Webster's Third New International Dictionary, Unabridged Edition (1965).*[2] Defendant's land is neither a "residential area" nor "an outlying part of a city or town."

Next, the decedent's injuries plainly did not occur on developed land. That motorcyclists and others had worn tracks in the grass did not make the field "developed." The RUA is not rendered inapplicable because some human activity occurs on the land. *Cypret, supra* at 228-229. The decedent's injuries are unrelated to the land itself. The trial court properly applied the RUA.

The RUA excepts from immunity "injuries . . . caused by the gross negligence or wilful and wan-

---

[1] Contrary to plaintiff's claim in his brief, no "aerial photographs" of the land appear anywhere in the record. Those were apparently deposition exhibits that were not filed with the transcripts.

[2] Plaintiff would have us apply a definition of "suburban" found in *Minnesota v White Bear,* 255 Minn 28; 95 NW2d 294 (1959), but that case involved an entirely different issue: whether territory proposed to be annexed to a city is so conditioned as properly to be subjected to its government. We see no need to import another state's definition of a term used in a different context.

ton misconduct of the owner." Plaintiff argues that defendant's failure to prevent motorcyclists from using the property when it knew that small children also frequented the land is conduct so extreme as to fall within the statutory exception. We disagree.

Plaintiff essentially concedes that these facts do not constitute "gross negligence." In Michigan, "gross negligence" still requires that a defendant act negligently *after* a plaintiff negligently contributes to his own peril. *Pavlov v Community Emergency Medical Services,* 195 Mich App 711, 718-719; 491 NW2d 874 (1992). Plaintiff pleaded that defendant negligently failed to prevent motorcycle riders from using the land. This alleged negligence preceded the decedent's own actions in going onto the land. Under the present definition of "gross negligence", that exception does not apply.

Plaintiff argues further that defendant's failure to prevent motorcyclists from using the land constitutes "wilful and wanton misconduct." We cannot agree. Mere negligence cannot be cast as "wilfulness" simply for the purposes of bringing a complaint. *Pavlov, supra* at 716. Wilful negligence is quasi-criminal and manifests an intentional disregard for another's safety. *Papajesk v Chesapeake & O R Co,* 14 Mich App 550, 556; 166 NW2d 46 (1968). Plaintiff has not pleaded facts establishing defendant's "intentional disregard" for the decedent's safety. Rather, plaintiff asserts that defendant's failure to recognize and remove the hazard posed by the motorcyclists is "such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Burnett v Adrian,* 414 Mich 448, 455; 326 NW2d 810 (1982), citing *Gibbard v Cursan,* 225 Mich 311; 196 NW 398 (1923).

This Court does not easily describe omissions to

act as "wilful and wanton misconduct." *Wilson, supra* at 379, rejected the contention that the defendant's failure to fence a pond met the *Burnett* standard. See also *Hill v Guy,* 161 Mich App 519, 524; 411 NW2d 757 (1987) (same); *Matthews v Detroit,* 141 Mich App 712, 718; 367 NW2d 440 (1985) (pre-*Wymer*; failure to fence off a public fountain). In *James, supra* at 194, the Court refused to find that the defendants' failure to take unspecified safety measures at the entrance to a pier was an omission "apparent to the ordinary mind . . . [that] would likely prove disastrous to another." See also *Montgomery v Dep't of Natural Resources,* 172 Mich App 718, 721-722; 432 NW2d 414 (1988) (failure to erect signs and allegedly negligent snow plowing and design of a snowmobile trail did not amount to wilful and wanton misconduct); *Graham v Gratiot Co,* 126 Mich App 385, 390; 337 NW2d 73 (1983) (failure to warn of, supervise, or secure a gravel pit where it was known that young people swam not wilful and wanton misconduct).

"Wilful and wanton misconduct" goes beyond ordinary negligence. In *Burnett, supra,* the plaintiff claimed that the defendant city knew about a dangerous structure beneath the waters of a man-made lake and knew that the structure created a hazardous undertow. The Supreme Court held that these facts barely made out an allegation of wilful misconduct. 414 Mich 456. See also *Lucchesi v Kent Co Road Comm,* 109 Mich App 254, 257; 312 NW2d 86 (1981) (the defendant's excavation of a gravel pit known to be used by off-road vehicles created "a crescent-shaped ring of material with a precipitous escarpment at its rear").

Plaintiff here has pleaded no more than ordinary negligence. Even if defendant can be charged with knowledge that both motorcyclists and chil-

dren were on the property, defendant's alleged negligence in not protecting one from the other does not rise to the level of "wilful and wanton misconduct." The court did not err in dismissing plaintiff's complaint on this basis.

The court also properly dismissed plaintiff's attractive nuisance claim because it duplicated the negligence claim. See *Graham, supra* at 391; *Hill, supra* at 525 (nuisance action cannot be recognized concurrently with action covered by RUA, citing *Burnett, supra*). The RUA applies regardless of the decedent's age, see *Randall, supra* at 214. It is irrelevant that the decedent could not be charged with comparative negligence because he was under seven years old. In any case, plaintiff has not made out a claim for attractive nuisance. The law of attractive nuisance "places an affirmative duty on landowners to carry on activities involving a risk of death or serious bodily harm with reasonable care for the safety of known trespassing children." *Byrne v Schneider's Iron & Metal, Inc,* 190 Mich App 176, 182; 475 NW2d 854 (1991), citing *Lyshak v Detroit,* 351 Mich 230, 249; 88 NW2d 596 (1957) (emphasis added). Defendant was not carrying on any activities from which the decedent should have been protected.

Finally, *Gouch v Grand Trunk W R Co,* 187 Mich App 413; 468 NW2d 68 (1991), is persuasive. Defendant was not responsible to protect the decedent from defendant Combs' criminal act. In *Gouch,* this Court found a railroad not liable to a child shot by a train passenger while walking on railroad property:

> As long as the landowner does not actively create or maintain the criminal activity or fail to act reasonably to end criminal activity which takes place in its presence, there should be no

liability for injuries that result from the criminal acts of those third parties.

We find this logic especially compelling in a trespass situation, be the trespasser an adult or child. [*Id.* at 417.]

Affirmed. Costs to defendant.