*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANDREW ALLSTOTT, also known as ANDREW
ALSTOTT,

      Plaintiff-Appellant,

v

GAGE GLIDDEN,

      Defendant-Appellee.

UNPUBLISHED
March 24, 2025
1:42 PM

No. 370497
Berrien Circuit Court
LC No. 2023-000015-NO

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

In this premises liability action, plaintiff appeals as of right the order granting defendant's motion for reconsideration of an earlier ruling, in which the trial court denied defendant's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. FACTUAL BACKGROUND

The incident giving rise to this action occurred at a party held at defendant's house in September 2022. Defendant and his wife were out of town at the time. Defendant's wife arranged for her sister, Allison Wagley, to come over to the house twice a day to take care of the family's dogs. Although Wagley was only supposed to be at the house to take care of the dogs, at some point she decided to throw a surprise birthday party on the property for her fiancé without defendant's knowledge or permission. One of the party attendees was plaintiff, who testified that he was invited to the party by Wagley's fiancé. To the contrary, Wagley's fiancé merely indicated that after he arrived, plaintiff showed up at the party. Plaintiff asserted that he had never met defendant or defendant's wife. Plaintiff further acknowledged he did not have permission from defendant or defendant's wife to be on the premises for the party. Defendant and his wife likewise agreed that they had never met plaintiff.

Plaintiff drank heavily before arriving at the party and continued to drink heavily upon arriving at the party, resulting in what he admitted was a state of extreme intoxication. Plaintiff also took several hits off of a marijuana "dab pen" and smoked multiple marijuana "joints" at the party. Plaintiff explained that he was grieving the deaths of two close friends at the time and got

-1-

too intoxicated as a result. Plaintiff spent the entire party outdoors, at one point standing on a deck attached to defendant's house. Plaintiff stated in his deposition that he was "crying pretty much hysterically" at one point in the evening. Plaintiff was so intoxicated that partygoers were trying to get him to sit down in a chair to avoid harming himself. However, plaintiff kept leaning on the deck railing. Plaintiff testified that the railing was not complete and that he was leaning up against what he believed was a board placed across an opening in the deck railing.

Testimony is mixed as to how plaintiff was injured. Plaintiff claims that he was leaning on a board across a hole in the railing and that he heard a loud cracking noise before falling through them to the ground below. Wagley's fiancé attested that while he did not see the accident occur, he believed plaintiff flipped over backwards off the deck railing, either because he was severely intoxicated or on purpose. He described plaintiff as "one of the most daredevil-ish [sic] people I know" and said that plaintiff "back flips off everything all the time." Wagley stated that she did not see the fall occur but heard plaintiff hit the ground. She did not hear or see anything to indicate that a portion of the deck broke or caused plaintiff's fall. She believed plaintiff was too drunk to have intentionally flipped over the side of the deck. An emergency medical technician (EMT) who responded to a 911 call about the incident testified that multiple partygoers informed him that plaintiff "was trying to do a back flip from the deck and messed up the landing." The EMT further stated that there was no evidence that the fall was caused by a portion of the deck giving way.

As a result of the fall, plaintiff suffered ligament damage to his neck that required surgery. In January 2023, plaintiff filed a complaint against defendant, alleging a single claim of negligence under a premises-liability theory. Plaintiff specifically alleged that the railing on the deck gave way and caused his fall. Plaintiff asserted that defendant breached his duty to protect him from an unreasonable risk of harm caused by dangerous conditions on the land and to warn of any defects. Plaintiff further asserted that the condition of the deck was not open and obvious, and that even if it was, the risk of harm was unreasonable.

During the course of the proceedings, defendant moved for summary disposition under MCR 2.116(C)(10). Defendant argued that plaintiff was a trespasser on the land because defendant had not invited him onto the property, nor did defendant and his wife have any knowledge that Wagley would use their property for that purpose. Defendant conceded that if the court were to view plaintiff as a social guest, he would be a licensee at best, but reiterated that he should be considered a trespasser. Defendant emphasized that based on plaintiff's status as a trespasser, defendant owed him no duty except to avoid injuring him through willful and wanton misconduct. As to that point, defendant argued that plaintiff could not establish that his injuries were caused by defendant's willful and wanton misconduct because defendant had no knowledge that the party would occur, suggesting that there was nothing defendant could do to avoid the harm to plaintiff. Finally, defendant argued that even if plaintiff could establish that he was lawfully on the property, he could not establish that defendant knew or should have known about a dangerous condition on the land. Defendant also pointed out that record evidence suggested that plaintiff jumped off the balcony on his own and that the fall was not caused by a structural defect. Ultimately, defendant argued that summary disposition was proper under MCR 2.116(C)(10), and asked the court to grant his motion.

Plaintiff responded that regardless of his status on the land, a question of fact existed for a jury to decide as to whether defendant breached the applicable standard of care. Plaintiff presented

evidence from a home inspection report and an appraisal, indicating that the deck had been professionally inspected and determined to be a safety hazard due to a missing railing and loose or rotting deck boards. Plaintiff pointed out that in defendant's deposition testimony, defendant stated that he had to put a gate across the area where the deck stairs used to be, noting that "the gate had to be temporarily placed there so my children and dogs didn't fall through before I gathered the lumber and the hardware to repair the damage [plaintiff] caused." Regarding plaintiff's status while on defendant's property, plaintiff argued that he had at least implied permission to be on the property because neither Wagley nor her fiancé told him that he could not be there or ordered him to leave. According to plaintiff, that suffced to show that he had their consent to be on the land. Thus, according to plaintiff, "conflicting inferences exist as to whether [plaintiff] should be considered an invitee or trespasser." Plaintiff likewise argued that any questions about whether defendant's conduct was willful and wanton, as well as whether plaintiff was comparatively negligent, should be resolved by a jury.

A hearing on the matter was held in January 2024, and the parties largely argued consistent with their briefs. The trial court found that a question of fact existed as to whether the deck posed a risk and whether defendant had a duty to warn about that risk. The court further found that a question existed as to whether plaintiff was a licensee or a trespasser on the land. Accordingly, the trial court ruled that summary disposition under MCR 2.116(C)(10) was premature.

Defendant moved for reconsideration in March 2024. As to whether plaintiff was a trespasser on the land, defendant argued that the trial court was "misled by an interpretation of law which overlooked the requirement that permission [to be on the land] can only be given by an actual owner or legal occupant regardless of the trespasser's subjective beliefs." Defendant reiterated that Wagley did not have permission to throw a party on defendant's property. Defendant explained that to the extent that Wagley was on the land for purposes other than simply checking on defendant's dogs, she was also a trespasser, with no permission to invite others onto the land or throw a party. According to defendant, it logically followed that plaintiff was trespassing and that defendant only owed plaintiff a duty to avoid harming him through willful and wanton misconduct. Defendant contended that there was no evidence presented in the record to show that plaintiff's injuries were caused by willful and wanton misconduct.

In April 2024, the trial court entered an order granting defendant's motion for reconsideration, finding that it had committed palpable error by finding that a question of fact existed as to whether plaintiff was a licensee on the property based on implied consent from Wagley. Citing *Pippin v Atallah*, 245 Mich App 136, 142; 626 NW2d 911 (2001), the court stated that in order to show implied consent, plaintiff had to present evidence that he entered the land with permission from "the owner, or [a] person in control of the property, [who] acquiesce[d] in the known, customary use of property by the public[,]" but that he failed to do so. Additionally, the court observed that the record indicated that Wagley knew she did not have permission to use defendant's property to have a party and had never been permitted to use the property for that purpose at any point in the past. The court thus found that plaintiff was a trespasser on the land and that at most, defendant owed him a duty not to harm him through willful and wanton misconduct. The court concluded that no evidence of willful and wanton misconduct was present in the record. It thus granted the motion for reconsideration and dismissed plaintiff's complaint. This appeal followed.

## II. ANALYSIS

Plaintiff argues that the trial court erred by granting defendant's motion for reconsideration and ordering that summary disposition be entered in defendant's favor under MCR 2.116(C)(10). He claims that questions of material fact exist as to his status on the land and the duty owed to him by defendant. We disagree.

Defendant moved for summary disposition under MCR 2.116(C)(10). This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*.

To the extent that this case concerns the trial court's decision to grant defendant's motion for reconsideration, this Court reviews such rulings for an abuse of discretion. *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Id*. Questions of law necessary to the resolution of the issues presented are reviewed de novo. *Bint v Doe*, 274 Mich App 232, 234; 732 NW2d 156 (2007).

To establish a premises-liability claim, a plaintiff must be able to prove four elements: "(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) causation, and (4) damages." *Gabrielson v Woods Condo Ass'n, Inc*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 364809; 364813); slip op at 8. Whether defendant owed plaintiff a duty in this matter is a question of law. *Id*. Additionally, the extent to which a plaintiff is owed a duty of care depends on the plaintiff's status on the defendant's land—either that of an invitee, licensee, or trespasser. *Id*.

Plaintiff contends that at minimum, he was a licensee, rather than a trespasser, because he was a social guest at a party. "A 'licensee' is a person who is privileged to enter the land of another by virtue of the possessor's consent[,]" *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000), which can be express or implied. *Kelsey v Lint*, 322 Mich App 364, 371; 912 NW2d 862 (2017). Permission to enter land "may be implied where the owner acquiesces in the known, customary use of property by the public." *Id*. (quotation marks and citation omitted). Generally, "social guests are licensees who assume the ordinary risks associated with their visit." *Stitt*, 462 Mich at 596. Social guests are not typically given "invitee" status, which only applies if the purpose for which a person was invited onto the property is "directly tied to the owner's commercial business interests," *id*. at 603-604, or "to render a service beneficial to the owner of the property." *White v Badalamenti*, 200 Mich App 434, 436; 505 NW2d 8 (1993). Unlike the other two categories of visitor, "a 'trespasser' is a person who enters upon another's land, without the landowner's consent." *Tripp v Baker*, 346 Mich App 257, 264; 12 NW3d 45 (2023) (quotation marks and citation omitted).

The trial court initially determined that a question of fact existed to preclude summary disposition because it was not clear who invited plaintiff to the party or whether the party was a "norm[al], customary use of the property such that Plaintiff could claim licensee status by virtue of implied consent[.]" In response to defendant's motion for reconsideration, the court later determined that plaintiff failed to establish a genuine issue of material fact regarding his status on the land because he did not present evidence showing that "the property had a known, customary use as a place for a party such as had been arranged on this occasion by Ms. Wagley." The trial court's focus on whether throwing a party was a "known, customary use" by the public is somewhat misguided. As earlier noted, permission for *licensees* to enter the premises may be expressly or impliedly given if the owner or the person in control of the property "acquiesces in the known, customary use of property by the public." *Kelsey*, 322 Mich App at 371 (quotation marks and citation omitted). To the extent that Wagley was on the property as a licensee, this standard would apply. However, the court overlooked that Wagley herself was trespassing on the property when she threw the party because she exceeded the scope of her authority on the land by doing so without defendant's permission.[1]

Given that the party was a social event and not tied to any commercial interest of defendant's, plaintiff could at most be considered a licensee. *Stitt*, 462 Mich at 603-604. But his status as a licensee turns on whether Wagley had the authority to invite guests onto the property. Wagley testified at her deposition that she knew that she was only permitted to be on the property to care for defendant's dogs while defendant and his wife were out of town. Wagley and her fiancé further attested that defendant and his wife had no knowledge that Wagley was throwing a party at their house and that she did not have permission to do so. Defendant and his wife likewise agreed that they did not know Wagley was throwing a party while they were away and that they never gave her permission to do so, either in relation to the September 2022 party or at any point in the past. Defendant and his wife also testified that they had never met plaintiff.

The record makes clear that Wagley only had licensee status for the limited purpose of letting defendant's dogs out, per the instructions given by defendant's wife.[2] Plaintiff nevertheless reasons that Wagley remained a licensee with the authority to invite guests onto defendant's property because defendant never told her she could *not* throw a party at his house. However, this argument is directly contradicted by Wagley's testimony that she knew she did not have permission to throw a party on the property and that she was only supposed to enter the property to care for defendant's dogs. It is well settled that even if a person enters a landowner's property as an invitee or licensee, they can become a trespasser if they exceed the scope of their permission to be on the land. See *Kent Co Agricultural Society v Ide*, 128 Mich 423; 87 NW 369 (1901) (finding that the defendant's "entry was not an entry under authority or license, but, in the first

---

[1] The trial court ultimately reached the correct conclusion that plaintiff was trespassing on the land. Thus, to the extent that this constitutes error, it was harmless. See *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309, 313; 696 NW2d 49 (2005) ("[I]t is axiomatic that this Court will not reverse a trial court's decision if the correct result is reached for the wrong reason").

[2] Letting defendant's dogs out while he was out of town does not constitute a commercial, business, or pecuniary purpose—it was merely an informal favor rendered to a relative, leaving Wagley squarely in the "licensee" category. *Stitt*, 462 Mich at 603-604.

instance, a wrongful entry, with a purpose not authorized by any license or authority of the owner"); *Constantineau v DCI Food Equip, Inc*, 195 Mich App 511, 515; 491 NW2d 262 (1992) (stating that an invitee's status on the land "can change if the scope of the invitation is exceeded"); 62 Am Jur 2d Premises Liability, § 117 (stating that a person who enters the land as an invitee or licensee may lose that status if they "exceed[] the scope or purpose of the invitation by . . . making use of the property and instrumentalities thereon for a purpose not contemplated by the invitation" (footnotes omitted)). When Wagley decided to throw a party, she became a trespasser, as she did not have permission from defendant or his wife to remain on the property for that purpose.

Under the circumstances presented here, plaintiff bore the burden to establish a question of fact as to whether he was lawfully on the land when the injury occurred. The record unequivocally shows that defendant did not give Wagley permission to throw the party and Wagley knew as much. Thus, reasonable minds could not differ as to whether Wagley was trespassing when she threw the party. As a trespasser, Wagley lacked authority to invite others onto the land, which rendered plaintiff a trespasser as well. *Tripp*, 346 Mich App at 264. Accordingly, plaintiff cannot establish a genuine issue of material fact regarding his status on the land.

Because plaintiff was trespassing when he was injured, defendant owed him no duty of care except to refrain from injuring him by willful and wanton misconduct. *Stitt*, 462 Mich at 596; see also MCL 554.583. The elements of willful and wanton misconduct are:

> (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. [*Taylor v Laban*, 241 Mich App 449, 457; 616 NW2d 229 (2000).]

"Willful and wanton misconduct" requires a showing of more than just ordinary negligence. *Ellsworth v Highland Lakes Dev Assoc*, 198 Mich App 55, 64; 498 NW2d 5 (1993). Specifically, "[w]ilful [sic] negligence is quasi-criminal and manifests an intentional disregard for another's safety." *Id*. at 61. "[W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Burnett v City of Adrian*, 414 Mich 448, 455; 326 NW2d 810 (1982).

Defendant has consistently maintained that he cannot be found liable for plaintiff's injuries because he had no knowledge of plaintiff's presence on the land, or knowledge that there was anything dangerous about the deck. At his deposition, defendant stated that he has not made any modifications to the deck except to fix the area that plaintiff broke. Defendant further attested that the railing was not broken before he went out of town. He stated that when he returned home to find that plaintiff had fallen off the deck, he had to temporarily block the hole in order to avoid injury to his children and pets. Defendant was shown photographs of the deck and explained that he covered the hole with a piece of fencing that was left in his garage by the previous homeowners, who had used it as a gate for their dogs.

In response to defendant's motion for summary disposition, plaintiff presented evidence that a home inspection and appraisal report dating from when defendant purchased the house in

2021 indicated that the deck had known defects, including a large hole in the deck railing and loose or rotting deck boards. A photograph included in the home inspection report shows that there appeared to be a piece of fence and a long board over a hole in the deck railing when the home inspection was conducted. Portions of defendant's testimony suggest that any hazards that existed when he purchased the house had been fixed by the time Wagley threw the party on his property. But plaintiff points out that defendant contradicted himself in the same testimony by indicating that he did not make any modifications to the deck until after plaintiff fell off it. Plaintiff contends that, contrary to defendant's testimony, the home inspection photographs show that the hole in the deck railing was always there and that defendant knew it was dangerous.

However, regardless of whose testimony is to be believed, the fact remains that either there was no hole in the deck railing at all, as defendant contends, or there was a hole in the railing that was boarded over, as plaintiff contends. Similar cases involve those in which a defendant's failure to erect a fence or other safeguard is alleged to cause injury to a trespasser. In such instances, this Court has generally found that the failure to prevent trespassers from injuring themselves by cordoning off dangerous conditions on the land does not constitute willful and wanton misconduct unless it is apparent to the ordinary mind that the result would likely prove disastrous. See, e.g., *Graham v Gratiot Co*, 126 Mich App 385, 390; 337 NW2d 73 (1983) (finding that failure to fence off a pond or post warning signs around a pond where the decedent drowned did not constitute willful or wanton misconduct). Exceptions are made for child trespassers or in instances where a landowner knows that trespassers frequently come onto their land. See *Pippin*, 245 Mich App at 144-145. But plaintiff is not a child and defendant had no knowledge of his presence. Thus, neither exception applies.

Here, plaintiff testified that the hole in the deck railing was covered by a board. The mere indication that defendant covered the hole in the railing at all indicates that his actions did not rise to the level of willful and wanton misconduct. To the contrary, the presence of some kind of covering over the hole in the deck would suggest that defendant did not want anyone to fall or injure themselves on the deck. Viewing this matter in the light most favorable to plaintiff, it is clear that even if an issue of material fact existed as to the condition of the deck, there is no evidence that defendant willfully intended to cause plaintiff harm or was so indifferent to whether harm might occur "as to be the equivalent of a willingness that it [would]" occur. *Burnett*, 414 Mich at 455. Accordingly, plaintiff cannot show that a genuine issue of material fact existed as to whether his injuries were caused by defendant's willful and wanton misconduct. Defendant was therefore entitled to summary disposition under MCR 2.116(C)(10), and the trial court properly granted his motion for reconsideration.

Affirmed.

/s/ Michael J. Kelly
/s/ Stephen L. Borrello
/s/ Michelle M. Rick